C. A. PICKERELL, Appellee, v. LULU GRIFFITH, Appellant.

No. 47068.

1152

November 11, 1947.

Life & Davis, of Oskaloosa, for appellant.

Bray, Carson & McCoy, of Oskaloosa, for appellee.

BLISS, J.—Plaintiff alleged in his petition that on or about the 27th day of March, 1946, the defendant orally employed him to find a purchaser for her residence property in Oskaloosa, Iowa, for which service she would pay him five per cent of the purchase price; that he found a purchaser who paid defendant $6,800 for the property and received a deed therefor, and defendant thereby became indebted to plaintiff in the sum of $340, with interest thereon at five per cent from April 1, 1946, which amount defendant has refused to pay.

Defendant by answer admitted the sale of her property for $6,800 to a purchaser brought to her by plaintiff, but denied the making of the alleged contract or any contract with plaintiff, and any and all liability to plaintiff because of said sale.

The jury returned a verdict for plaintiff against defendant for $349 on which judgment for plaintiff was entered.

There was evidence of the following matters: That on or about the 24th to the 27th of March, 1946, the plaintiff called upon defendant at her home and when no third person was present, asked her if her home was still for sale, and she replied that it was and that she had "run an ad on this property but * * * the buyer had only wanted to pay a small amount down and she wanted the cash"; that plaintiff told her he had a party who might be interested and who would pay her all cash; that plaintiff inquired what price she was asking, and she replied that she could not give him any price for a couple of days until she found out what the expense and her income tax would be; that she asked plaintiff what his charge for selling it would be and on being told that it would be five per cent she said she would pay him that amount if he sold the property; that he could show the property to his party and she would tell him the price later. Plaintiff testified that he thought this conversation was on March 24, 1946. The 24th

was Sunday. Plaintiff alone testified to the above matters. Defendant denied that any of them occurred either on the 24th or any other day. Plaintiff testified that on this same day, March 24th, he showed the house to his prospect, Alvin Shultz, in the presence of the defendant. She admitted this as a witness, and said that she had a conversation with Shultz in the presence of the plaintiff. On objection that it was immaterial, incompetent, and irrelevant, and had no bearing on any issue in the case, the court did not permit her to give the conversation. Shultz was not a witness in the main case, but, as a witness for plaintiff on rebuttal, over objection, he testified to his conversation with defendant. He testified that possibly a week before he and plaintiff went to see the property he was in the market for a house and called at plaintiff's office and asked him to look up a house, and that plaintiff looked through his cards of listings and said he had a house on North Third Street that was listed at $6,500; plaintiff called defendant and asked her if she had sold the place and if he might bring somebody to look it over. Shultz did not remember the date of their call. Over an objection that included the grounds that the question was leading and suggestive, he was asked on direct examination:

"Now at that time you may state whether or not you heard Mr. Pickerell say to Mrs. Griffith, 'We came down to see whether you still wanted to sell your property and whether your price is the same as previously listed—$6,500.' "

The insert quotation was propounded to the defendant on the same day but shortly after the alleged agency agreement was made between plaintiff and defendant when no one else was present, according to plaintiff's testimony above noted. The answer of Shultz was:

"He asked her if the price of $6500—if that was the price on the house. Do you want me to tell you what she said? She said that she had heard that if she sold this property she would have to pay some income tax on what she [had] made over what she had bought it for and if so, she was going to raise the price a little. She wanted me to call her and find out what the price would be later. I told her no, that I was

doing business with Mr. Pickerell and that he would call her and find out.''

According to the testimony of plaintiff and of Shultz, the plaintiff was the defendant's agent to sell, and Shultz' agent to buy, in the same transaction. Shultz was not asked about any oral agreement between plaintiff and defendant.

Plaintiff testified that the next day, March 25th (Monday), he again saw defendant at her house and told her that he had another party who might be interested to whom he would like to show the property, and asked her what her price was, and she told him $6,800. In the afternoon of that day, he took Mrs. John Williams, of New Sharon, Iowa, to the property and the defendant showed her through the house. The next day plaintiff again came to the property with Mrs. Williams and her husband. Defendant took them through the house, and testified that, as the group was leaving the house, Mr. Williams asked her what her price was and she told him $6,800. Mr. and Mrs. Williams then went with plaintiff to his office where he prepared in duplicate a contract for the purchase and sale of the property, which the Williamses signed. Mr. Williams paid him $100 in cash and plaintiff took the cash and contracts to defendant, who refused to accept the $100 or to sign the contracts until her attorney had examined the contract. After her attorney approved it, defendant signed the contracts and delivered one to plaintiff and received the $100. It appears from the testimony of Mr. and Mrs. Williams that plaintiff was in error as to his dates, although he did not alter his testimony. The contracts were dated March 28th and were executed by all parties on that day. That was the date on which Mr. and Mrs. Williams together inspected the property. Mrs. Williams had examined it the day previous, March 27th, which was the day after Shultz looked at the property on March 26th.

Sometime later the purchasers and defendant met at the office of the latter's attorney and the transaction was closed by the payment of $6,700, the balance of the purchase price. Defendant removed from the property to the town of Beacon on May 11, 1946. Sometime later plaintiff called on her there and asked for his commission and defendant told him that she

owed him nothing since the sale was brought about through the sale ad. There is no direct evidence that either Mr. or Mrs. Williams had any knowledge of the advertisement for the sale of her property, which defendant put in the afternoon Oskaloosa paper. They testified that they knew nothing of the ad, and that they had engaged plaintiff to find them a house and no one but he had anything to do with procuring it.

It is the defendant's contention that various rulings of the court were erroneous, and that, in the conduct of the trial, the judge, abetted by plaintiff's counsel, was unfair as between the parties, and the remarks of the judge, were, without provocation, of a nature to belittle both the defense and the defendant's counsel, and to deprive defendant of a fair trial.

■ I. Defendant complains because she was not permitted to show, either by her own testimony, or by the newspaper itself, that on March 25, 1946, she caused to be placed in the Oskaloosa Herald, a daily paper, which, as stated in defendant's argument, comes onto the street about 3 p.m., the following advertisement:

"For Sale: Eight room, all modern home, full basement, 3 room apartment second floor with private entrance. 215 North Third St."

The fact that there was such a sale ad was first put into the record by plaintiff on his direct examination as shown herein. It was again put into the record by plaintiff, by repeated interrogation, over objections, when on direct examination he asked Mr. and Mrs. Williams whether either of them had seen or had knowledge of the advertisement. Each answered in the negative.

Defendant was first asked in her direct examination whether or not she had inserted the ad on March 25th. The court sustained an objection that it was leading, suggestive, hearsay, self-serving, incompetent, irrelevant and immaterial to any issue in the case. Her attention was then directed to the ad in a copy of the newspaper. The offer was met by this objection:

"Plaintiff objects to Counsel making any further reference to the Oskaloosa Herald as repetition, the Court has sustained

the objection and it will not be admissible in evidence, and plaintiff objects to the effort to get before the jury evidence which the Court has said should not go to the jury. Court: That hasn't anything to do with the case. But he can lay his foundation, if he wants to.''

Plaintiff's objection to the way of laying the foundation was sustained. The question was again asked defendant whether she had inserted the ad on March 25th. To plaintiff's objection the court said:

''Oh, she may state whether she inserted the ad. I don't know what it has got to do with the case. Mr. Bray: The plaintiff objects as incompetent, irrelevant and immaterial. No witness has testified they ever saw any ad. Not binding on this plaintiff. Court: Yes, the objection will be sustained. Defendant excepts. Mr. Life: The defendant now offers to prove by this witness that——Mr. Bray: Plaintiff objects to any offer to prove being made here before the jury in a loud tone of voice. Counsel knows that is improper. Court: Yes, *you better try this lawsuit like a lawyer would try it.* Mr. Life: I insist on making an offer. Court: You may retire into the Judge's office and the Court Reporter will make the record there.''

This was done. The plaintiff's objection to the offer that it was ''incompetent, irrelevant and immaterial, having no possible bearing on any issue in this case and constituting no defense to plaintiff's claim,'' was sustained.

If testimony is properly admissible, a party, ordinarily, should be permitted to introduce it in his own way—to make his own case—if he follows right procedure. The fact that the other party has incidentally put into the record some mention of the item of evidence should not preclude him from offering more complete evidence of it. Having introduced the subject matter for his own purposes, a party ought not be allowed, without impelling reason, to close the door against the other party.

Is it true, as insisted by plaintiff, and ruled by the court, that the proof of this ad, and particularly the proof of the date of its publication in the paper, had no materiality, no relevancy,

no bearing on any issue, "nothing to do with the case?" It is true as plaintiff urges that "no witness has testified they ever saw any ad." Shultz was not asked about it. Plaintiff introduced the testimony of Mr. and Mrs. Williams that neither had seen the ad as a part of his case, to prove the allegation of his petition that he had procured the purchaser. Defendant had not affirmatively pleaded that the purchaser was procured through her ad, but, after plaintiff had offered direct evidence to the contrary, defendant was entitled to refute it. Direct evidence for that purpose was reasonably out of the question. She was entitled to do so by the best evidence available—by evidence of circumstances having a tendency to show a probability that they had seen the ad. To do so it was important for her and also proper to show the facts about the ad—that it was published in an Oskaloosa daily paper, in the real estate column referring specifically to her home, at a time prior to their contacting the plaintiff. In support thereof it was important that she show the date of its appearance in the paper. Mr. and Mrs. Williams were looking for a house to buy in Oskaloosa, where Mr. Williams was employed. Such persons very often look through the "Real Estate For Sale" ads. The wife testified: "I went to see Mr. Pickerell about getting a house *first*—the same day I went to see the Griffith property." That day was March 27th—the second day after March 25th—the day the offer of proof showed the ad appeared in the paper. On direct examination, over objections to each question, she answered:

"I didn't know Mrs. Griffith before the 27th day of March, 1946. I did not know there was such a person before that day. I did not know there was a house for sale at 215 North 3d Street before that time. I didn't see any advertisement for that house for sale in any newspaper. I didn't see any such ad. *I wasn't able to read at that time.*"

Mr. Williams testified:

"I know C. A. Pickerell as a real estate man * * * On or about the 28th of March, 1946, I went with my wife and Mr. Pickerell to look at a property owned by Mrs. Griffith. I went on the second day—my wife had looked at it the previous day.

I went up to Mr. Pickerell's office and then to the house 215 on North Third Street with my wife and Mr. Pickerell. Q. Did you ever see any advertisement of this property in any newspaper? (Objection was overruled.) A. No."

Plaintiff made the matter of the advertisement and whether either Mr. or Mrs. Williams had seen it a factual issue in the case for the consideration of the jury, over defendant's objections. It was not a pleaded issue or defense. The rejected evidence was clearly admissible with respect to the aforesaid testimony of Mr. and Mrs. Williams. It was material and relevant on this factual issue which plaintiff forced into the record for the consideration of the jury. It was clearly admissible for its bearing on the credibility of these two witnesses and the probative value of their testimony. Their testimony that they never saw the ad was of a character that its denial by direct, verbal, testimony was quite impossible. In such situation it is the rule of courts generally to be liberal in the admission of evidence of circumstances from which inferences may be fairly drawn as to the probative value of the proffered testimony.

 The rejected evidence respecting the ad had material bearing and probative force on another issue—the real issue and crux of the case—whether there was such a contract as alleged by plaintiff. It had little or no support other than his uncorroborated testimony. It was denied by defendant. It had no support from the testimony of Shultz. In fact, his testimony discredited and cast doubt upon the existence of such contract. Plaintiff testified that on Sunday, March 24th, he talked with defendant at her home and she told him her home was for sale, that she had put a sale ad in the paper, that she would pay him a commission of five per cent of the sale price, and that he might have his prospects look at the house, and she would set the price later. However, a little later that same day, according to Shultz' testimony:

"I met him [Pickerell] in his office and he called her from there to see if it would be all right to show the house. If I remember his words correctly, he asked if she had sold the place and if it would be all right to bring somebody down to look it

over. He looked through his cards there of the listings that he had and he told me that he had a house on north 3d street that was listed at $6,500.''

This conduct of plaintiff in checking over his listing cards until he came upon the card noting defendant's property, his asking her by telephone whether she had sold the property, and whether he might show it, is unexplainable in one who, if his testimony is true, an hour or so before had called upon defendant and knew the property had not been sold, but was for sale, available for showing though she had not set a price, and had made a contract with her to sell it. It is also quite improbable that with all of the information which he testified he had obtained from her on his first trip to her home that Sunday morning, that on his second trip that day, accompanied by Shultz, his greeting to defendant would be: ''We came down to see *whether you still wanted to sell your property* and whether your price is the same as previously listed—$6,500.'' This claimed listing was in August 1945. Plaintiff offered no corroborating evidence of it. He admitted that he had no written listing by defendant. His counsel asked defendant if she knew Roy Rich who worked with plaintiff in September 1945, intimating perhaps that the listing was with him, but Rich was not a witness. Defendant denied ever having listed her property for sale with plaintiff or with Rich, or ever having set a price on it, or having had it up for sale. Plaintiff does not base his action on such listing.

The fact, as testified by Shultz, that ''she wanted me to call her and find out what the price would be later,'' tends to establish two things, first, that she thought plaintiff and Shultz were there in response to her sale ad, and that Shultz was going to deal directly with her, and second, that it is unlikely she would ask Shultz, who came with plaintiff, to contact her directly, if she had just a short time previously employed plaintiff to find a purchaser.

In view of the discrepancies in the testimony of plaintiff and his witnesses respecting the dates of his contacts with defendant it was important and material to defendant that the date and other facts relating to the advertisement be shown. It was important for another reason. Of course, the fact that

defendant on March 25, 1946, had advertised her property for sale, would not preclude the making of plaintiff's alleged contract, nor would it conclusively show that it was not made, but it would tend to show the improbability that such a contract was made.. The very fact that she placed the ad in the paper is cogent evidence that she wished to sell by her own efforts, and not through the medium of a real-estate broker. Because of that fact it was proper and important to show that approximately at the time the·ad appeared the plaintiff claimed she had employed him to find a purchaser at a compensation in excess of $300.

The proffered evidence of defendant which was rejected by the court should have been received. Plaintiff argues that the challenged evidence pertained to collateral matters having no place in the record. He apparently did not think so when he introduced evidence of the ad in his main case. The evidence was not collateral but was closely connected with matters in issue and had a direct bearing thereon.

■ "The competency of a collateral fact to be used as the basis of legitimate argument, is not to be determined by the conclusiveness of the inferences it may afford in reference to the litigated fact. It is enough if these may tend, even in a *slight degree,* to elucidate the inquiry, or to assist, though remotely, to a determination probably founded on truth." Stevenson v. Stewart, 11 Pa. St. 307, 308. (Italics supplied.)

See, also, Jones, Law of Evidence, 2d Pocket Ed., 154, section 138; Holmes v. Goldsmith, 147 U. S. 150, 164, 13 S. Ct. 288, 37 L. Ed. 118; Hoadley v. Hammond, 63 Iowa 599, 604, 19 N. W. 794.

■ II. (a) After defendant had taken the witness chair in her defense she was first asked five simple, preliminary questions, namely, her name, residence, her marriage status, her former ownership of the property, and its sale by her in March. She answered them briefly and directly. The time consumed could not have greatly exceeded a few moments. She was then asked this preliminary question, answerable by "yes" or "no":

"Do you remember the circumstances leading up to that

sale? Plaintiff objects as incompetent. Not specific, indefinite. Court: Sustained. *Let's get down to the issues here.*"

The admonition was uncalled for. The witness was the first for the defense. There had been no avoidance of the issues by defendant.

(b) "Q. Who first came to see you about the sale of your property? Plaintiff objects as incompetent, irrelevant and immaterial, calling for hearsay testimony. Court: *The only persons involved here are the plaintiff and the defendant. We are trying this lawsuit. Confine yourself to the parties involved in the lawsuit.*"

There is not the slightest intimation in the record that counsel for defendant was attempting to draw in any person other than those who had been referred to in the trial.

 (c) This question was asked defendant on direct examination:

"You wanted to sell this property? Plaintiff objects as calling for the opinion and conclusion of the witness, incompetent, irrelevant and immaterial. Court: Sustained. I think you have established that."

A few minutes later, on cross-examination, the identical question, slightly reworded, was asked by plaintiff's counsel, to wit:

"In March 1946, you were very desirous of selling the property? Objected to as incompetent, irrelevant and immaterial. Court: Overruled. A. Well, yes. I ran an ad. That is what I ran it for. Plaintiff moves to strike out all of the answers following 'yes'. Court: Sustained as to the last statement following 'yes'. Q. Were you desirous of selling your property at that time? A. Yes."

It is true that the question of each party called for answer to a matter of little or no materiality, and her desire to sell was conceded by each side, but if defendant was not entitled to an answer neither was the plaintiff.

 (d) On cross-examination of defendant she was asked:

"You knew he [plaintiff] made his living by selling property? A. I did not know anything about him making his living by selling property for owners. Q. Did you think that he worked for nothing? A. I had no conversation with him. Q. Did you think he was working for nothing? Was that your idea about it? Defendant objects as incompetent, irrelevant and immaterial. What she thought doesn't have anything to do with it. Court: Overruled. A. Well, I knew he wasn't working for me for I had not hired him."

The matter inquired about was of no relevance or materiality, yet, over objections by defendant, the same question was repeated and answered five times or more without any admonition by the court to keep to the issues.

But in the cross-examination of plaintiff, and following his testimony that:

"After I took Shultz out my next trip out was with Mrs. Williams; I had made arrangements beforehand to take her out. I went down and told her [defendant] I had another party who would like to look at the property and would it be alright to show it, and she said yes. Q. That was after you went down to show it to Mr. Shultz? Plaintiff objects as repetition. Court: Yes, *you have gone over that Shultz business about six times.* He may answer again."

There had been some repetition—not at all infrequent in the trial of cases—but no more so than had been indulged in by plaintiff's counsel, and without impatient admonition.

Cross-examination is a most important right to a litigant, and a most effective aid to the jury and the court in the securing of justice in litigation. It has been said that "the power and opportunity to cross-examine * * * is one of the principal tests which the law has devised for the ascertainment of truth, and is certainly a most efficacious test." I Starkie on Evidence (1826) 129. While we have said that its extent must be left largely to the sound legal discretion of the trial court, depending upon the particular circumstances, we have also held that cross-examination is a right to be jealously guarded. In Upton v. Knoll, 32 Iowa 121, 122, 123, the court said:

"Cross-examination affords one of the most effective means of detecting falsehood and discovering truth, and the rules governing it should be applied in a broad and liberal spirit, with a view to effectuating substantial justice."

In Glassman v. Chicago, R. I. & P. Ry., 166 Iowa 254, 260, 147 N. W. 757, 760, the court said:

"Refusal to allow cross-examination on relevant matters covered by the examination in chief is a denial of an absolute right, and has been generally held to be sufficient ground for reversal. It is usual, under such circumstances, to allow considerable latitude of interested witnesses * * *. It is true, of course, that the trial court has a discretion in such matters, but it has been said in some of the cases that it is only after the right of cross-examination has been substantially and fairly exercised that its allowance becomes discretionary."

In Jones v. Lozier, 195 Iowa 365, 372, 191 N. W. 103, 106, the court said:

"The right to pertinently cross-examine a witness is not a matter of the trial court's discretion. It is a valuable right, essential to a fair trial upon any issue of fact, and prejudice will be presumed from its arbitrary denial."

In Schulte v. Ideal Food Products Co., 203 Iowa 676, 682, 213 N. W. 431, 434, the court said:

"The right of cross-examination of the adversary's witness is quite distinct in character from the right of a party to examine his own witness for the purpose of adducing facts. The right to cross-examine is quite absolute. It inheres in the right of the adversary to use the testimony of the witness at all. One of its purposes is to test the credibility of the witness."

See, also, Eno v. Adair County Mut. Ins. Assn., 229 Iowa 249, 256 et seq., 294 N. W. 323, and authorities cited. We are not holding that such limitation in the cross-examination of plaintiff would ordinarily be an abuse of discretion, but we mention it because it bears upon defendant's assigned error complaining that the court unfairly discriminated in the matter

as between the parties, and that its comment tended to improperly prejudice defendant in her defense.

(e) We have set out in Division I hereof the record of what took place when defendant's counsel started to make his offer of proof of the sale ad appearing in the newspaper. The offer had not proceeded far enough to prejudice plaintiff's cause, when counsel for plaintiff objected. But no harm had been done. The jury had already been informed of the fact that there had been a sale ad of some kind, by testimony introduced by plaintiff. The direction of the court for the attorneys to accompany him to his chambers and there make the offer was all that was necessary to be said. The preceding remark to defendant's counsel that "you better try this lawsuit like a lawyer would try it," was wholly uncalled for and prejudicial, regardless of whether there was provocation for it. Its very probable effect was to belittle the attorney and prejudice the defendant in the minds of the jury. Occasionally lawyers in the heat of trial may irritate the trial judge. But their zeal is usually pardonable and subsides with a cautionary word from the judge. It is the duty of a judge to listen with a most patient ear. There is a proper time and place to remind the lawyers in a trial of the proprieties of courtroom procedure, but that time and place is not when or where it will hurt a litigant's cause. The general rule is thus stated in 26 R. C. L., Trial, section 27:

"The judge should, during the course of the trial, refrain from remarks that are calculated in any way to influence the minds of the jury. This includes remarks to counsel touching the management of the case and reflecting on their conduct * * *."

And in 64 C. J., Trial, section 91:

"A remark or comment * * * which is such that it may be assumed prejudice will result therefrom, is fatal to the validity of the trial."

Speaking to the point, this court in State v. Philpot, 97 Iowa 365, 369, 66 N. W. 730, 732, said:

"But it is a matter of common knowledge that jurors hang tenaciously upon remarks made by the court during the progress of the trial, and if, perchance, they are enabled to discover the views of the court regarding the effect of a witness' testimony, or the merits of the case, they almost invariably follow them."

It appears from the printed argument of defendant, and it is not denied in plaintiff's answering argument, that the court instructed plaintiff's counsel to prepare and submit to opposing counsel for approval its order overruling defendant's motion for new trial. Counsel for defendant noted his disapproval thereof "as to form and substance." This order of the court contains the statement that the admonishment of counsel discussed just above "was made after said attorney had repeatedly committed acts of impropriety, and the court makes this statement of the reason for said admonishment in order that there may be a proper record concerning the matter." We have read the complete transcript of the record and find no justification for the quoted statement. There are no acts of impropriety on the part of defendant's counsel shown therein. Counsel on each side asked questions that were subject to objection and were repetitious. They were each equally at fault in that respect. There was no reasonable provocation on the part of defendant's counsel, or justification, for the remark of the court.

 (f) On direct examination this question was asked of defendant:

"Now I will ask you to state * * * whether or not you ever employed Mr. Pickerell as a real estate broker to sell your property? Plaintiff objects as calling for the opinion and conclusion of the witness, incompetent, irrelevant and immaterial. Court: Yes, it calls for a conclusion. She may state what she said and did, and the jury will say whether she hired him. Objection sustained."

The comment of the court would have been pertinent had the defendant been attempting to establish a contract. But she was not. She contended that there was no contract. Plaintiff pleaded in his petition, in the words of the question, that he had been "employed." She denied it in her answer. She

could hardly prove the nonexistence of the contract by proving what was said and done, if, as she contended, there was nothing said or done concerning a contract. It was proper, competent, relevant and material, and not a conclusion, to say directly that she had never employed plaintiff. However, the error was not prejudicial or reversible, because she had previously been asked, and answered:

"Q. Did you ever have any conversation with Mr. Pickerell at any time prior to the time that Mr. Pickerell and Mr. Shultz came to your property, with regard to your engaging him as your real estate agent, and he saying to you that he would charge you five per cent for selling your property? A. I never had any conversation with Mr. Pickerell in any way concerning him selling the property." She gave other like testimony.

Defendant complains of other instances of harmful remarks of the court which we do not consider necessary to expressly comment upon.

III. Defendant assigns error because the court read an instruction which he told the jury verbally to disregard, as the subject matter was covered in another instruction. The court overlooked withdrawing from the written instructions the one he told the jury to disregard. But there was no conflict or inconsistency between that instruction and the other instruction which covered the same matter. The inadvertent error was not prejudicial.

IV. Defendant assigned error in the court's deletion from the appeal record of certain portions of the trial record. We do not find in the printed record what the claimed deletions were. But our reading of the transcript does not disclose any omissions therefrom that were prejudicial to defendant.

V. There was no reversible error in plaintiff's argument to the jury.

VI. Defendant assigned error in submitting the cause to the jury. She urges that the evidence did not preponderate in favor of the plaintiff but, at most, was in equipoise. There was evidence supporting the allegations of plaintiff's petition and

the issues were properly submitted to the jury for determination. In such case it is not the province of this court to pass upon the weight or probative force of the evidence, or the credibility of the witnesses. However, because of the errors assigned by defendant respecting the unfairness of the trial because of the rulings of the court and the remarks complained of we have deemed it proper to comment upon the weight of the evidence, particularly as it bears upon the making of the alleged contract of agency. There is no issue of quantum meruit in the case. The question of whether the evidence preponderated in favor of plaintiff is a very close one. It was a fairly debatable question. One on which the minds of members of the jury might have reasonably disagreed. Prejudice against the defendant, however slight, might very well have tipped the balance in arriving at the verdict in favor of the plaintiff. The circumstances are such that, considering the matters complained of as a whole, it is our conclusion this is what probably took place. Error in the trial of a cause, prima facie, is ordinarily presumed to beget prejudice against the party erred against.

VII. Defendant's motion for new trial should have been granted.

VIII. Plaintiff's motion to dismiss the appeal is overruled. The judgment is—Reversed.

OLIVER, C. J., and HALE, GARFIELD, SMITH, MULRONEY, MANTZ, and HAYS, JJ., concur.