STATE OF IOWA, appellee, v. E. T. LANSMAN, appellant.

No. 48338.

(Reported in 60 N.W.2d 815)

NOVEMBER 17, 1953.

L. W. Powers, of Denison, for appellant.

Leo A. Hoegh, Attorney General, Raphael R. R. Dvorak, Assistant Attorney General, and Robert M. Underhill, County Attorney, for appellee.

THOMPSON, J.—On November 5, 1952, the grand jury of Monona County returned an indictment against the defendant, charging that on October 16, 1952, he committed the crime of false drawing or uttering of a certain check in the sum of $140.40, given to the Art Jenson Locker, for which he secured things of value. The indictment alleged the defendant knowingly did not have an arrangement, understanding, or funds with the Ute State Bank, upon which the check was drawn, sufficient to pay or meet the same. The violation charged is of section 713.*13* of the Code of 1950. Actually the false check statute is section 713.*3* of the Code of 1950, but the error has not been challenged and we consider the case as though the proper section number had been used.

The defendant having pleaded not guilty the cause came on for trial on February 9, 1953. The sole witness in the case was Art M. Jenson, the complainant. He testified he was the proprietor of the Art Jenson Locker referred to in the indictment, located in the town of Moorhead. He was in the business of buying and selling eggs, dealing in produce, and operated a grocery store and meat locker. He had known the defendant about thirty years. Defendant was in the business of buying and selling chickens and eggs in Ute, a town about eleven miles from Moorhead. In the summer of 1952 the witness commenced selling eggs, which he had bought from farmers, to defendant. On October 16 he sold defendant several dozen eggs and defendant

gave him the check which forms the basis of the indictment. The check was introduced in evidence. It was deposited in the bank at Moorhead for collection within a day or two. It came back through the Moorhead bank, unpaid, "a week or ten days later." The record does not show why the check was not paid at this time. Jenson called the defendant on the telephone and was told the check was then good and "to send it up." He put it through the same channels but it was again returned, this time with the notation "account closed."

On cross-examination this witness said he would recognize a copy of a depositor's statement from the Ute State Bank. Being shown a statement from this bank of the defendant's account for October 16, 1952, he said there was a balance in the account for that date of $388.22. He further testified that according to the bank statement defendant had a balance in the bank on October 15, 1952, of $1663.25, and on October 17, 1952, of $575.65.

The State rested at the conclusion of Jenson's testimony, and defendant moved for a peremptory verdict by direction of the court. This was refused and defendant also rested. The jury was instructed, and after deliberation returned its verdict of guilty against the defendant.

I. The material part of Code section 713.3, with which we are dealing here, is this: "Any person who with fraudulent intent shall make, utter, draw, deliver, or give any check, draft, or written order upon any bank, person, or corporation and who secures money, credit, or thing of value therefor, and who knowingly shall not have an arrangement, understanding, or funds with such bank, person, or corporation sufficient to meet or pay the same, shall be guilty of a felony, if such check, draft, or written order shall be for the sum of twenty dollars or more, and shall on conviction thereof be punished as in section 713.1 * * *."

Section 713.4 provides: "The fact that payment of said check, draft, or written order when presented in the usual course of business shall be refused by the bank, person, or corporation upon which it is drawn, or that it be protested for nonpayment for lack of such arrangement, understanding, or funds with which to meet the same, shall be material and competent

106

evidence of such lack of arrangement, understanding, or lack of funds."

The essential elements of the crime are these: (1) Intent to defraud (2) securing money, credit or other thing of value by means of a check, draft or written order, and (3) knowingly not having any arrangement, understanding, or funds with the bank, person or corporation upon which the check or other instrument is drawn sufficient to meet or pay the same.

Many cases say the fraudulent intent is the gist of the crime. We ourselves have said: "An essential element of the crime charged is fraudulent intent." State v. Doudna, 226 Iowa 351, 357, 284 N.W. 113, 116; State v. McCutchan, 219 Iowa 1029, 1031, 259 N.W. 23. Whether the intent to defraud be the gist of the offense or merely one of the important elements is immaterial; it is certainly a necessary part of the State's case, to be proven as are all other requirements in a criminal action.

It will be noted here the State offered no evidence from the drawee bank as to the insufficiency of the funds, or lack of arrangement or understanding. It is aided, however, by section 713.4, which says a showing the check was refused by the drawee shall be material and competent evidence of such lack of arrangement or funds. When the State showed the check had been returned unpaid it had made a prima-facie case on which it was entitled to have the jury's verdict. But it then developed by cross-examination of the State's witness that there had been sufficient funds in the defendant's account in the Ute State Bank to pay the check, not only on the day on which it was drawn but on the following day. This appeared from the bank's statement to the defendant, which we must assume was taken from and accurately reflected its records. Both parties argue the case on this assumption.

At the close of the State's case, therefor, the record showed the giving of the check for value, its return unpaid, the presumption or inference of fact to be drawn under section 713.4, and the attempted rebuttal of such presumption or inference by the information taken from the bank's statement. Our first and major inquiry is whether there was at this point anything to be submitted to the jury, or whether the defendant was entitled to a directed verdict. Substantially, was the "material and compe-

tent evidence" provided for by section 713.4 overcome by a positive showing to the contrary? The serious question is whether there is any sufficient showing of intent to defraud for the jury to consider. Section 713.4, until the evidence which it makes available to the State is conclusively rebutted, also makes proper an inference of fraudulent intent. That is to say, when the State shows the nonpayment of the check by the drawee, the statute then says the same showing is evidence of insufficiency of the funds to meet it, and the lack of any arrangement to pay it; and we think there is then a proper inference of intent to defraud. Fraud may arise from facts and circumstances, and an intent to defraud may properly be inferred from circumstances, words and actions shown in evidence. Leach v. Arthur Savings Bank, 203 Iowa 1052, 1063, 213 N.W. 772.

But if the showing, whether it be labeled a presumption or an inference of fact, provided for the State by section 713.4 is conclusively rebutted, either by the State's own case or by the defendant, the evidence of fraudulent intent falls and there is nothing to submit to the jury. It could not be contended that in the absence of section 713.4 the State of Iowa had made a case here. There would be only a showing of the sale of the goods, the receipt of the check in payment, and its return from the bank unpaid. The reason why it was unpaid, whether because of insufficient funds, because other checks previously written arrived first and exhausted the account, or checks later written did the same, or the writer of the check hastened to the bank and withdrew his funds, or the bank applied the money on some indebtedness owing it, or the account was garnished or otherwise sequestered by legal proceedings, or the maker was in receivership or bankruptcy, or some check or draft previously deposited in the account had been refused payment and so charged back, would not in any way appear. No intent to defraud could be inferred from this situation. It is only by virtue of section 713.4 the State had at any time made a prima-facie case.

The problem presented is whether a showing there were sufficient funds on hand to meet the check when it was written and delivered and the goods were received by the maker conclusively rebuts the presumption or inference raised by the statute. Presumptions are eliminated if they are conclusively rebutted,

but conclusiveness is essential. Beggs v. Metropolitan Life Ins. Co., 219 Iowa 24, 28, 257 N.W. 445, 447, 95 A. L. R. 863: ("The cases are clear upon the proposition that the nonexistence of the presumed fact must be conclusively established before presumption can be eliminated."). See also Schaefer v. Anchor Mut. Fire Ins. Co., 133 Iowa 205, 110 N.W. 470. Of course if the presumption is not so eliminated a jury question is presented.

We must keep in mind that while the intent to defraud must exist at the time the check is written and the thing of value received for it, the statute, section 713.4, supra, makes nonpayment when presented in the usual course of business the test for raising the presumption. In other words, the fact the funds or credit are not available for payment when the instrument is presented brings the presumption or inference of fact into play. Such is the situation here. Can it then be said the presumption or inference is conclusively rebutted by a showing, either by the State or by the defendant, that there were sufficient funds in the bank to pay the check at the time it was written? We think not. In the absence of any showing why the funds or credit were not available to pay the check when presented, we cannot say the presumption arising by virtue of the statute, which makes payment the test, is entirely eliminated.

This does not mean the burden is cast upon the defendant to prove himself not guilty. He is required only to meet and overcome the presumption raised by section 713.4. This he might do by showing that, without his knowledge, the bank had applied his funds upon some indebtedness owing to it, or his account had been sequestered by legal proceedings, or a check or draft deposited by him had been unpaid and so charged back, or by some other evidence which would conclusively show lack of fraudulent intent when he wrote the check forming the basis for the prosecution. Such a showing was made in Wolfe v. State, 76 Fla. 168, 79 So. 449, L. R. A. 1918F 980; State v. Thompson, 37 N. M. 229, 20 P.2d 1030; State v. Hack, Mo. App. (not reported in Missouri State Reports), 284 S.W. 842; and People v. Humphries, 226 App. Div. 500, 234 N. Y. S. 688.

In Padgett v. State, 24 Ala. App. 133, 131 So. 3, under a statute apparently in substance the same as ours, the intermedi-

ate Alabama Appellate Court said the presumption was conclusively rebutted by a showing there were funds in the bank sufficient to meet the check when it was written. The opinion is short, and we think not well reasoned. The facts seem to make the case in point in defendant's favor here, but we do not agree with the conclusion reached. The question is not whether there were funds on hand to pay the check when it was drawn, but whether there is a sufficient showing to overcome the presumption of fraudulent intent made by the statute through its nonpayment when presented. This requires evidence as to the reason for nonpayment.

In view of the statute which makes nonpayment "material and competent evidence" of lack of funds or credit with the bank, and so of intent to defraud, something more than a showing there were funds in the bank to meet the check when it was drawn is required if the presumption is to be eliminated. Other checks, previously drawn against the account and outstanding, may have reached the bank first; the maker of the check may have in other ways withdrawn his funds before the check in question could be presented in due course; or other situations may have existed with the knowledge of the drawer at the time it was uttered, which would support, rather than negative, a finding of fraudulent intent. The reason for the failure to pay not being made to appear, the presumption or inference of fact remains in force.

In Huffman v. State, 205 Ind. 75, 84, 185 N.E. 131, 135, the Indiana Supreme Court said: "The condition of a drawer's account at the time a check is issued is not conclusive as to the drawer's knowledge or lack of knowledge that he has not sufficient funds in or credit with the drawee bank to pay the check in full upon presentation." This statement is also found in Moore v. State, Okla. Cr., 250 P.2d 46, 53. It is regrettable in the case at bar there is no explanation why the check was not paid, but we must take the case as it comes to us. The conclusion is inescapable that the presumption arising from the statute has not been conclusively rebutted.

██ II. A second assignment of error says the court mistakenly instructed the jury, in effect, that defendant was guilty if he did not have sufficient funds in the bank to pay the check when presented for payment. Since in argument defendant says

"the same question is involved in errors one and two", and we have found assigned error one to be without merit, we would perhaps be justified in giving no further attention to the second assignment. But we think there is a matter arising under the court's Instruction No. 7 which will bear comment. This is apparently the instruction of which defendant complains, since he quotes from it. We set it out herewith:

"The check in question, Exhibit '1', has been permitted to go before you as evidence as bearing only on the question of the drawing and the delivery of the check to Art Jenson Locker, and you are to wholly disregard any endorsements appearing on the same regarding the sufficiency or insufficiency of funds, and hence it is incumbent upon the State to show beyond a reasonable doubt by other evidence, aside from any endorsements which may appear upon the face of said check, that there were insufficient funds to meet the check when presented, and that the defendant knowingly and with a fraudulent intent then and there did not have an arrangement, understanding or funds with the aforesaid bank sufficient to meet and pay the same when presented."

It will be noted some confusion might arise from this instruction as to when the fraudulent intent must exist; that is, whether it must have motivated the original writing of the check, or whether it would be sufficient if it arose at the time it was offered for payment. We have said it must have existed when the check was drawn and the goods received. Doubt arises under Instruction No. 7, standing alone, through the use of the words "then and there" following the reference to "insufficient funds to meet the check when presented." But under long-established rules requiring no citation of authority all instructions in the case must be read and construed together. Instruction No. 5 told the jury plainly the fraudulent intent must have existed on October 16, 1952, the time of the making, drawing and delivery of the check. A fair construction of the instructions as a whole makes it clear they were not calculated to mislead the jury on this point. They did tell the jury it might consider the nonpayment of the check when presented as evidence of original fraudu-

lent intent. We have pointed out this was not error in view of the presumption or inference of fact raised for the State by section 713.4.

On the entire record we find no error.—Affirmed.

All JUSTICES concur.