**STATE of Iowa, Appellee,**

v.

**James B. KIMBALL, Appellant.**

No. 53564.

Supreme Court of Iowa.

May 5, 1970.

Don J. Wilson, West Des Moines, for appellant.

Richard C. Turner, Atty. Gen., James W. Hughes, Asst. Atty. Gen., Carl R. Letz, Hardin County Atty., and Allen M. Oppen, Special Prosecutor, for appellee.

STUART, Justice.

A Hardin County jury convicted defendant of false drawing and uttering of a check in violation of section 713.3, Code of Iowa. The trial court sentenced him to a term of seven years at the state penitentiary. He has appealed claiming seven errors which are stated, briefed and argued in five divisions covering less than eight pages. We would have appreciated more help.

I. The essential elements of the crime charged are: "1, Intent to defraud; 2, securing money, credit or other thing of value by means of a check, draft or written order; and 3, knowingly not having any arrangement, understanding, or funds with the bank, person or corporation upon which the check or other instrument is drawn sufficient to meet or pay the same." State v. Lansman (1953), 245 Iowa 102, 106, 60 N. W.2d 815, 817.

Defendant claims there was not sufficient evidence of these elements to raise a question for the jury. We do not agree. There was evidence from which the jury could find the following:

On the evening of May 1, 1968, defendant, in the presence of Harm Folkerts, an employee of the Eldora Livestock Sales Barn, wrote a check in the amount of $10,-475.36, to the sales barn for the purchase of 53 head of cattle. The check was drawn on the Security State Bank in Radcliffe, Iowa, and signed "Jim Kimball, Special Account".

Around 10:00 p. m. the same night the 53 head of cattle were loaded on two trucks at the Eldora Sales Barn for defendant and taken to the Union Stockyards in Omaha. Defendant made arrangements for their unloading.

It was brought out by defendant on cross-examination of Orlen Stolee, co-manager of the sales barn, that the cattle were being bought for him and were to be brought to defendant's farm and finished.

The next morning Folkerts gave the check to the bookkeeper for the sales barn who delivered it to the general manager. He took the check to the Security State Bank in Radcliffe and presented it for payment. The vice-president and cashier of the bank testified the check was presented for payment May 2, 1968 and was refused for insufficient funds. Defendant had only one account with that bank.

This evidence, aided by section 713.4 which provides that refusal of the check for

insufficient funds by the bank on which it was drawn "shall be material and competent evidence of such lack of arrangement, understanding, or lack of funds", was sufficient proof of all the elements of the offense charged to make a jury issue of defendant's guilt. State v. Lansman, supra at 106–107, 60 N.W.2d at 817–818.

II. The case was specially assigned for trial January 6, 1969. Defendant appeared without counsel. The following colloquy took place in the presence of the entire jury panel:

"THE COURT: The case that was specially assigned for today at 1:30 was State of Iowa v. Jim Kimball, or James Kimball, James B. Kimball. State ready for trial?

"MR. OPPEN: The State is ready, Your Honor.

"THE COURT: Where is the defendant? Come on up here. Sit down here. Where is your counsel?

"MR. KIMBALL: He is in Des Moines.

"THE COURT: Stand up. You swear under oath that you have a counsel? MR. KIMBALL: No, I have not fully retained him yet.

"THE COURT: How many times have you pulled this on this court? MR. KIMBALL: Pulled what, sir?

"THE COURT: Appeared without counsel. MR. KIMBALL: I have never. I changed attorneys the last time I was here.

"THE COURT: I told you this morning to get him to call me. Did you call him? MR. KIMBALL: Sure did. He is supposed to call you back.

"MR. LETZ: Alre Watts, Judge Hellwege's court reporter. The call is from Mr. Wilson, the attorney in Des Moines.

"THE COURT: You may sit down. (Intermission)

"THE COURT: Stand up. Wilson said that your wife called him about 1:00 o'clock today. MR. KIMBALL: That is when I talked to him also.

"THE COURT: He is not in court. MR. KIMBALL: No, he was this morning.

"THE COURT: Yes. He is free now. MR. KIMBALL: That, I don't know.

"THE COURT: I just got him on the phone. Now, you are not going to play fast and loose with this court. We are going to try this case or else you are going over here to jail and wait. I will forfeit your bond. MR. KIMBALL: I am here, sir, that is all I can say.

"THE COURT: What? MR. KIMBALL: I am here, that is all I can say. I was ordered to appear.

"THE COURT: I can't try you without an attorney, and the only reason you don't have an attorney is that you haven't paid for one. MR. KIMBALL: I said that before.

"THE COURT: Do you have funds to hire one. MR. KIMBALL: The funds will be in to Mr. Wilson this week. I told him that on the phone. We haven't been able to do it on account of the weather. It is something that has to be done personally.

"THE COURT: I have a jury waiting here and it is stormy outside. MR. KIMBALL: Yes, I know. I spent about twelve or thirteen hours on the road myself.

"THE COURT: This case is going to be tried this week. Now, I am going to release this jury until Wednesday morning at 9:30 and you be here with counsel, or I am going to try you without counsel, one or the other. Wilson is on the phone, what shall I tell him? MR. KIMBALL: Tell him I will talk to him in Des Moines.

"THE COURT: Do you want to talk to him on the phone? MR. KIMBALL: Yes, I can.

"THE COURT: Go ahead. (Mr. Kimball leaves the courtroom.)

"THE COURT: Making you people come out in this kind of weather. While he is talking on the phone to Wilson you may take a roll call. I will tell you something, you get paid for today regardless. I am sorry this case was specially assigned. (The clerk takes roll call of the jury.) (Mr. Kimball returns to the courtroom.)

"THE COURT: This case is going to be set for trial. I told Mr. Wilson and I am telling you in front of these jurors that this case is going to be set for trial at 9:30 Wednesday morning. That is the 8th of January. Fail not at your peril. Do you understand? MR. KIMBALL: No, I didn't hear you.

"THE COURT: Fail not at your peril. MR. KIMBALL: Oh, I will be here.

"THE COURT: You are going to be tried, I will tell you that, whether you have counsel or not."

On January 8 prior to trial, defendant moved the court for a continuance until another jury panel was present claiming the court's remarks so prejudiced the jury that defendant could not obtain a fair trial before that panel. Defendant assigns the overruling of this motion as error.

■ We cannot approve of the court's remarks to defendant in the presence of the jury. There may have been some justification for the trial court's obvious irritation with defendant, but he should not have displayed this hostility before the jury panel. The court should at all times be cautious of what he says and does when a jury is present. 23 C.J.S. Criminal Law § 987, p. 995; 53 Am.Jur. 75, Trial 76. They are particularly sensitive to a judge's views and the revelation of his feelings toward the parties, counsel or witnesses may influence the jury more than the evidence. See Pickerell v. Griffith (1947), 238 Iowa 1151, 1164–1165, 29 N.W.2d 588, 595–596; State v. Philpot (1896), 97 Iowa 365, 369, 66 N.W. 730, 732.

■ At this time the courts are acutely aware of defendant's right to a fair trial and it is essential for trial courts to be impartial and circumspect in the treatment of defendant, his counsel and witnesses. See Annotation 62 A.L.R.2d 166, Conduct of Court—Rebuking Counsel. "It is vastly more important that the attitude of the trial judge should be impartial than that any particular defendant, however guilty he may be, should be convicted." Hunter v. United States (5th Cir. 1932), 62 F.2d 217, 220.

■ The trial court's remarks revealed his irritation with defendant and his obvious hostility toward him. Although there is no claim the hostility was displayed subsequently, this attitude may have permeated the whole trial and affected the jury's action on the case. It may have jeopardized the presumption of innocence to which defendant is entitled. We cannot escape the conclusion that these comments were likely to arouse prejudice against defendant in the minds of the jury. We are slow to hold matters calculated to arouse prejudice non-prejudicial in a criminal case. State v. Collins (1955), 246 Iowa 989, 996, 69 N.W.2d 31, 35.

■ We believe defendant was denied a fair trial by the trial court's pretrial remarks and must reverse his conviction for that reason.

III. The direct testimony of Gordon Reisinger, manager of the Eldora Livestock Sales, Inc. is summarized in the record as follows: "On or about May 1, 1968, Mr. Jackson gave me a check that I took to the Security State Bank at Radcliffe and presented it for payment."

On cross-examination he was asked if the Eldora Livestock Company had instituted civil suit against Mr. Kimball. The trial court sustained an objection to the question.

■ Although it has considerable discretion in determining the scope and extent

of cross-examination, State v. Frommelt (1968), Iowa, 159 N.W.2d 532, 537, the trial court erred in refusing to allow the witness to answer this question. It is proper for a party to inquire as to the interest the witness may have in the matters about which he is testifying. State v. Sampson (1956), 248 Iowa 458, 79 N.W.2d 210, 212. As we are reversing the case for the reasons stated in division II, we need not decide whether the error was prejudicial under these particular facts.

IV. The trial court instructed the jury: "Under our law a person charged with a crime may testify in his own behalf, but he has a right not to be a witness in his own behalf, and the exercise of such right on the part of the defendant shall not be considered by the jury for any purpose."

Defendant did not request the instruction nor raise any objection to it until his motion for new trial. At that time he objected to the instruction on the ground that it "calls to the attention of the jury the right of defendant to testify and is therefore erroneous because it is prejudicial to defendant".

Early Iowa cases decided under a statute which made it reversible error for the state's attorneys to refer to the fact that defendant did not testify in his own behalf held the giving of such instruction was discretionary with the trial court. State v. Reid (1925), 200 Iowa 892, 894, 205 N.W. 517; State v. Bower (1921), 191 Iowa 713, 716, 183 N.W. 322; State v. Weems (1895), 96 Iowa 426, 448–449, 65 N.W. 387; State v. Stevens (1885), 67 Iowa 557, 559, 25 N.W. 777.

After this statutory requirement was repealed our cases held it was not reversible error for the state's attorney to comment on defendant's failure to testify and allowed the court to instruct that the failure to testify could be considered by the jury as an inference of guilt, State v. Holder (1945), 237 Iowa 72, 82–83, 20 N.W.2d 909, 915; State v. Ferguson (1939), 226 Iowa 361, 363–364, 283 N.W. 917, 918–919.

Since Griffin v. State of California (1964), 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed. 106, we have held comments and instructions drawing inferences of guilt from defendant's failure to testify violate the Self-incrimination Clause of the Fifth Amendment, and constitute reversible error. State v. Wallace (1967), Iowa, 152 N.W.2d 266, 269; State v. Raymond (1966), 258 Iowa 1339, 1343–1344, 142 N.W.2d 444, 447; State v. Osborne (1965), 258 Iowa 390, 392, 139 N.W.2d 177, 178; State v. Johnson (1965), 257 Iowa 1052, 1055, 135 N.W.2d 518, 520–521.

The question now is whether an instruction which tells the jury *no inference* can be drawn from defendant's failure to testify violates the Griffin rule in the absence of a request for such instruction. The cases since Griffin have been gathered in an annotation in 18 A.L.R.3rd 1335. An overwhelming majority of the recent cases hold it is not reversible error.

We considered a similar instruction in State v. Wallace (1967), Iowa, 152 N.W.2d 266, 270 and held: " * * * when a defendant objects it is the better practice to give no instruction whatsoever relative to his failure to testify, but the giving of an instruction, *absent objection by defendant*, to the effect no inference of guilt or innocence be drawn by the jury from his failure to testify, does not constitute prejudicial error." (Emphasis supplied)

In the Wallace case no objection was made in the trial court. Here objection was made after the instruction was given. We must determine if the objection was timely. Under our criminal procedure the misdirection of the jury in a material matter of law and the refusal to properly instruct the jury are among the grounds for a new trial, section 787.3, Code of Iowa. However, defendant must request additional or more specific instructions before the instructions are given. State v. Franklin (1968), Iowa, 163 N.W.2d 437, 441.

It is not claimed the instruction given is an erroneous statement of the law. It is claimed to be prejudicial because it calls the jury's attention to defendant's failure to take the stand.

■ This is a cautionary instruction, Hanks v. United States (10 Cir., 1968), 388 F.2d 171, 175; Bridges v. State (Fla.App.), 207 So.2d 48, 50; Brown v. State (1965), 112 Ga.App. 634, 145 S.E.2d 695, 696; State v. Buchanan (1966), 76 N.M. 141, 412 P.2d 565, 567 and the giving or refusal of such instructions rests largely in the sound discretion of the trial court. State v. Shephard (1964), 255 Iowa 1218, 1231, 124 N.W. 2d 712, 719–720, and citations.

■ Many cases have held it is not reversible error to give the instruction in the absence of a request. Locklear v. United States (CA 5, 1968), 393 F.2d 729, 730; Hanks v. United States, supra; Coleman v. United States (CA 9, 1966), 367 F.2d 388; Bellard v. United States (CA 5, 1966), 356 F.2d 437, 439, cert. den. 385 U.S. 856, 87 S.Ct. 103, 17 L.Ed.2d 83; United States v. Kelly (CA 2, 1965), 349 F.2d 720, 769; Bridges v. State, supra; Harvey v. State (Fla.App.1966), 187 So.2d 59, 60; Brown v. State, supra; Commonwealth v. Sullivan (Mass.1968), 239 N.E.2d 5, 14, 16; State v. Buchanan, supra; but see: State v. Zaragosa (1967), 6 Ariz.App. 80, 430 P.2d 426, 428; State v. Cousins (1966), 4 Ariz.App. 318, 420 P.2d 185, 192; People v. Horrigan, 253 Cal.App.2d 519, 61 Cal.Rptr. 403, 406. We hold the giving of the instruction was not reversible error when given.

We must recognize, however, that the instruction is a comment on defendant's failure to testify even though it is supposedly for defendant's benefit and is designed to keep the jury from speculating on the reasons for his failure to take the stand and drawing improper inferences therefrom. There are those who believe the instruction is more harmful than helpful and regardless of how favorably to the accused the instruction may be worded it may inadvertently cause the jurors to consider certain adverse inferences which would not otherwise have entered their minds.

■ Because of the divergent opinions in this sensitive area and as the giving of even a cautionary instruction favorable to defendant may violate the spirit of Griffin v. State of California, supra, we believe it is advisable for us to take a definitive position on this issue. We now hold that such instruction should not be given in any future trial unless it is requested by defendant, and that it will be considered error if it is given, absent such request, in any trial started after the date this opinion is filed.

V. Defendant asserts numerous errors in the instructions which we have considered and find to be without merit.

For the reasons stated in division II, we reverse the trial court and remand the case for new trial.

Reversed and remanded.

All Justices concur, except UHLENHOPP, J., who takes no part.