GERTIE ENGELBERCHT, Guardian, Appellee, v. PAUL T. DAVISON et al., Appellants.

**JUDGMENT:** **Vacation—Restoration of Status Quo.** An incompetent, through his guardian, may, on proper grounds, maintain an action to set aside and annul a judgment in foreclosure without offering to restore the status quo, when the incompetent received no part of the money secured by the mortgage.

**JUDGMENT:** **Vacation—Unknown Insanity—Effect.** A judgment in foreclosure which was obtained by the holder in due course of the notes secured, and which has passed to foreclosure deed, will not be set aside on the ground that the defendant was at all times mentally incompetent, and that the notes and mortgage were forgeries, (1) when neither the plaintiff nor the court had knowledge of such grounds, (2) when the defendant was *personally* served in the foreclosure, and appeared by counsel and filed answer, and (3) when the defendant had never been adjudged to be insane, nor was he an inmate of a state hospital for the insane.

Headnote 1:   32 C. J. pp. 790, 791; 34 C. J. p. 480.   Headnote 2:
32 C. J. pp. 789, 790, 791.

Headnote 2:   15 R. C. L. 703.

*Appeal from Polk District Court.*—JOSEPH E. MEYER, Judge.

APRIL 5, 1927.

REHEARING DENIED JANUARY 13, 1928.

Action in equity by the guardian of an alleged incompetent,
to vacate and set aside certain judgments and decrees of fore-
closure entered in the district court of Polk County, Iowa. The
court granted the relief prayed, and the defendant appeals. The
facts appear in the opinion.—*Reversed.*

*George Cosson* and *Harold H. Newcomb*, for appellants.

*Miller, Kelly, Shuttleworth & McManus* and *H. O. Vralsted*,
for appellee.

FAVILLE, J.—One Engelbercht, a widower, with his three
children, occupied a farm in Polk County. The farm was the
property of the wife of Engelbercht, who apparently had died
intestate. The three children had all attained their majority,
and were unmarried. On or about April 1, 1921, a note of
$2,500 was given to one Thomas. This note was signed by the
senior Engelbercht and his two children Gertie and Freddie, and
purports to be signed by Alle Engelbercht by his mark. To se-
cure said note, a mortgage was given on the same date. The
mortgage appears to have been signed by Alle Engelbercht by
his mark, and appears to have been duly acknowledged. The
signature of Gertie Engelbercht does not appear on said mort-
gage, as set forth in the abstract, although the witness testified
that she did sign it. The certificate of the notary attached to
said mortgage recites that all of said parties appeared before
him and acknowledged the execution of said mortgage to be
their voluntary act and deed. The signature of Alle to said
mortgage by mark is witnessed by one witness. Neither this
witness nor the notary who took the acknowledgment was a
witness in this case, nor was the son Freddie.

The father died sometime prior to March 28, 1922. The three children continued to occupy said premises, and on the said last-named date, Gertie and Freddie executed and delivered to the said Thomas another note, for $600. This note appears on its face to be signed by Alle Engelbercht, and on said date a mortgage was given to the said Thomas, to secure the payment of said note of $600, which mortgage was signed by Gertie and Freddie, and purports to be signed by Alle and to be duly acknowledged by all of said parties. The acknowledgment is in the usual form. This notary, who was a different person from the one taking the other acknowledgment, was not produced as a witness upon the trial of the case. Both of said mortgages were duly recorded in the office of the recorder of Polk County. On October 28, 1921, the mortgage of $2,500 was duly assigned to the appellant, and on August 9th, the mortgage of $600. Each of said notes and mortgages were transferred to the appellant before maturity of the same. In 1923, suits were instituted by the appellant to foreclose said mortgages, in the district court of Polk County. The three children, Gertie, Alle, and Freddie, were personally served with notice of said actions, and the said three parties appeared by counsel and filed joint answer, which was verified by Gertie. No issue was raised in said actions involving the incompetency of Alle, nor any denial of his signature to the instruments. Each of said actions proceeded to decree foreclosing said mortgages, and, no redemption having been made, in due time sheriff's deed was issued to the appellant herein, who was the purchaser of said premises at sheriff's sale. Subsequently, Gertie was appointed guardian of Alle, and thereafter instituted this action to vacate and set aside the said decree and all proceedings thereunder. The court found that Alle was a person of unsound mind, and set aside the decrees and sheriff's deeds in so far as any interest of the said Alle's in said real estate was concerned, and decreed said Alle to be the owner in fee simple of an undivided one-third interest in and to the real estate in question.

I. Appellant moved the trial court to dismiss the cause of action because the appellee had failed to plead that she had placed appellant *in statu quo,* or made any offer to do so. Under

**1. JUDGMENT:**
vacation: restoration of status quo.

the peculiar facts of this case, we do not deem it essential to the maintenance of this action that the appellee should place the appellant *in statu quo,* or offer to do so. The notes and mortgages import a consideration, but the evidence affirmatively shows that no consideration passed from the payee in said notes and mortgages to the appellee's ward, Alle. The evidence satisfactorily shows that the consideration in both instances passed from the payee to the father. It appears that the father was obligated for not only the $2,500 represented by the note and mortgage which he signed, but also the $600 note and mortgage which were subsequently signed by the children. The consideration for the obligation represented by the notes and mortgages did not, in fact, pass to the children, but was received by the father. Under the entire record, we think the appellee could maintain the action without any tender of a restoration to the appellant. Alle had nothing to restore.

II. The finding of the trial court that the ward, Alle, was mentally incompetent is challenged by appellant. We have examined the testimony on this subject with great care. It ap-

**2. JUDGMENT:**
vacation: unknown insanity: effect.

pears that, at the time of the trial, Alle was 39 years of age; that he had always lived at home, and had gone to school, when a child, for seven or eight years. His sister testified that he did not learn to read or write. She testified that he would not understand what a note or a mortgage was. Neighbors who had been acquainted with him testified to the effect that he was mentally deficient. A former teacher testified that he did not know his A, B, C's, and that she tried to teach him by different methods, but without success; that, after a year's effort, he knew no more about the A, B, C's than when he commenced, and when she taught him, he could neither read nor write. Other witnesses expressed opinions to the effect that he would not understand if he was signing a note or a mortgage, and would not know what it was for. A medical expert who examined him testified that he had a marked speech defect; that he tried to talk without making any sound; that he only occasionally made some simple remark; that he was feeble-minded, stupid, and dull, and appeared to be frightened, without any reason for it; that his general appearance and actions were those of a low-grade feeble-minded person;

of about the mental age of five years. The doctor's conclusion was that Alle had the mental ability of a child five years old, and that the condition had existed from the time he was five years old. He also expressed the opinion that Alle was not capable of signing a contract understandingly. The doctor did not know whether he could read or write, but in his opinion, Alle would be unable to appreciate any kind of a binding instrument, such as a contract. The testimony of other witnesses tends to show that Alle could say things that would be understandable, and could talk about the matters on the farm. He did the ordinary work around the farm, plowed the corn, herded the cattle, and helped saw wood.

No person testified to ever having seen Alle either sign his name or make his mark to either of the notes or mortgages in controversy. Two different notaries took the acknowledgments, but neither was produced as a witness. There was a witness to the mark of Alle on the mortgage which purported to be signed by him, but this person was not produced as a witness. The payee of both the notes and mortgages, one Thomas, was shown to have personally conducted the transactions, in whole or in part, in securing the execution of the instruments. His testimony was not procured. The fact that he is in the penitentiary did not prevent its being taken. The other member of the family, Freddie, who signed all of the instruments, was not produced as a witness.

The evidence showed that, when the guardianship papers were served on Alle, he said it was a map of Polk County. The testimony of Gertie is to the effect that the payee in the notes, Thomas, procured her signature to the papers, and she testified that Thomas said he would put down Alle's name, as he did not need to sign; that Alle was not there at the time, and she said that she would get him, but Thomas said he did not need the boy. It also appears that upon the $600 note the signature of the ward, Alle, appears to be spelled Alle Engel*brecht,* and the signature on the mortgage appears to be Alla Engel*bercht.* We have not incorporated all of the evidence.

Upon a careful consideration of the entire record, we are constrained to hold that the appellee successfully carried the burden of establishing that her ward was a person of unsound mind at all times referred to.

III.    Section 12787, Code of 1924, provides that a final judgment or order of the district court may be vacated after the term at which the same was rendered, under certain conditions, one of which is "for erroneous proceedings against a minor or person of unsound mind, when such errors or condition of mind do not appear in the record."

The decrees of foreclosure were entered of record on December 20, 1923. The instant action was not started until June 2, 1925, but at said time the said Alle was living, and the disability of unsoundness of mind had not been removed. Section 12793, Code of 1924. Under the provisions of the statute, the bringing of this action by the guardian of Alle was timely, and we are then confronted with a situation as to whether or not the appellee is entitled, under the record, to have the decrees in the foreclosure cases vacated. It is to be observed that the judgment may be vacated "for erroneous proceedings against a * * * person of unsound mind when such errors or condition of mind do not appear in the record."

In *Montagne v. Cherokee County*, 200 Iowa 534, we considered a somewhat similar situation, and therein said:

"A judgment rendered against an insane person in a proceeding where jurisdiction is acquired by such service as would be valid but for defendant's insanity is, at most, voidable, and not void. The effect of insanity is to render the judgment subject to attack, provided that a prima-facie defense to the action is shown to have existed. The rule we here express is universally announced by the courts. *Lamprey v. Nudd*, 29 N. H. 299; *Atwood v. Lester*, 20 R. I. 660; *West v. McDonald* (Ky.), 113 S. W. 872; *Heard v. Sack*, 81 Mo. 610; *Thomas v. Hunsucker*, 108 N. C. 720 (13 S. E. 221); *Denni v. Elliott*, 60 Tex. 337; *Dunn v. Dunn*, 114 Cal. 210 (46 Pac. 5); *Carroll Imp. Co. v. Engleman* (Iowa), 99 N. W. 574 (not officially reported); *Hawley v. Griffin*, 121 Iowa 667; *Watson v. Horner*, 178 Iowa 499; *Jones v. Schaffner*, 193 Iowa 1262."

In said case we further said:

"We have repeatedly held that the grounds upon which a judgment may be vacated either in law or equity must be found among those enumerated in the Code. *Lumpkin v. Snook*, 63 Iowa 515; *Jackson v. Gould*, 96 Iowa 488; *Ruppin v. McLachlan*,

122 Iowa 343; *Richards v. Moran,* 137 Iowa 220; *Yocum v. Taylor,* 179 Iowa 695.''

We also said:

''However, we have repeatedly held that the deed of an insane person is not void. The effect accorded it will depend upon the circumstances under which it was executed. *Ashcraft v. De Armond,* 44 Iowa 229; *Alexander v. Haskins,* 68 Iowa 73; *Kent v. La Rue,* 136 Iowa 113; 23 Corpus Juris 759.''

The ground for vacation of said decrees, if any exists, must be found in the statute, and the only ground upon which the relief can be granted is ''for erroneous proceedings against a minor or person of unsound mind when such errors or condition of mind do not appear in the record.'' What erroneous proceedings against the person of unsound mind were had in the foreclosure cases?

It is to be remembered at this point that there is no evidence in the record that the plaintiff had any notice or knowledge whatever that the said Alle was a person of unsound mind, nor was there notice of such fact in any manner brought to the attention of the trial court. We therefore have a situation where the appellant was a bona-fide holder for value of notes and mortgages appearing on their face to have been executed by said Alle. He instituted an action for the foreclosure of said mortgages, and personal service was had upon the said Alle, the return of the sheriff showing such service. There is no claim that Alle had ever been declared to be insane, or that he was in a state hospital for the insane. Thereafter, Alle duly appeared by counsel in said cause, and made defense thereto. Subsequently trial was had, decree was entered, execution issued, and the property sold. More than a year thereafter, this suit is commenced. Upon such a state of facts, can it be said that the guardian of Alle may now vacate said action and all of the proceedings had thereunder on the contention that, at the time of bringing said action to foreclose said mortgages, Alle was a person of unsound mind, and that a defense now asserted was not made to said action in his behalf? Such is, in effect, the situation. The important question at this point is not alone whether the said Alle had a good defense to the instruments in question on the ground that they were forged, or that he was of unsound mind, but the question, in its last analysis, is as to the effect that

must be given to the adjudication in the foreclosure proceedings, under all the facts and circumstances surrounding the case. The court did have jurisdiction of Alle in said proceedings by proper notice. There was nothing of record to in any way bring to the attention of the plaintiff or of the court the fact that the said Alle was at said time a person of unsound mind. There was a defense interposed by and in behalf of the said Alle.

Appellee contends that, under Section 10997, Code of 1924, "no judgment can be rendered against a minor until after a defense by a guardian," and that the same rule applies to a person of unsound mind. The statute, however, makes a clear distinction. Section 10997 refers to defense by a minor, and contains said provision; but Section 11000, referring to the defense of an insane person by a guardian, applies only to such persons as have been judicially declared to be insane, or are confined in a state hospital for the insane. There is no requirement of the statute that a person who is not judicially declared to be insane, and who is not confined in a hospital for the insane, must defend by a guardian unless it appears somewhere in the course of the proceedings that the person is, in fact, of unsound mind. Neither a plaintiff nor the court is required to appoint a guardian *ad litem* for an adult who has been personally served with notice, and who appears by counsel and presents a defense in a case where the defendant has not been judicially declared to be of unsound mind, and is not confined in a hospital for the insane, and where there is no fraud or concealment, and neither the court nor the plaintiff has notice or knowledge that such defendant is a person of unsound mind. To hold otherwise would require the court or a plaintiff to examine into the mental condition of every adult defendant appearing by counsel, before a judgment could safely be entered.

Every person is presumed to be of sound mind until the contrary appears. Sanctity must be given to the solemn judgments of courts of record, and they cannot and should not be disturbed, when once duly entered, except for cogent, satisfactory, and controlling reasons. In the instant case, there is not a suggestion of any fraud, either on the part of the appellant or on the part of the attorney who appeared and filed answer for said Alle in the foreclosure case. The court in said action

had jurisdiction of the subject-matter. It had jurisdiction of Alle, both by service and appearance. Neither plaintiff nor the court had the least intimation that Alle was not a competent person. An answer was filed in said action by an attorney for and in behalf of said Alle, presenting the only defense then insisted upon in his behalf. The effect of the present proceedings is to ask that the decrees so entered be set aside, in order that the said Alle may now appear in said action, either in person or by the guardian who has since been appointed, to present another and additional defense in said foreclosure proceedings, to wit, the claimed forgery of the notes sued upon. This he cannot now do. There is no statute of this state authorizing such proceeding under such circumstances, and a court of equity, with its broad and plenary powers, cannot disturb the titles to real estate that rest upon the decrees of court duly entered after service, pleading, and trial, upon any such showing as has been made in this case. Appellee has brought no case to our attention under facts anywhere similar to those in the case at bar, that supports the conclusion of the trial court in vacating and setting aside the decrees in the foreclosure cases. The decrees in the foreclosure cases were not void. Even though it be conceded that they were voidable, we do not deem the showing such, upon the entire record, as requires or justifies their vacation.

As bearing on the question, see *Spurlock v. Noe* (Ky.), 43 S. W. 231; *Dunn v. Dunn,* 114 Cal. 210 (46 Pac. 5); *Stigers v. Brent,* 50 Md. 214 (33 Am. Rep. 317); Freeman on Judgments (1873) 123, Section 152; *Tomlinson's Lessee v. Devore,* 1 Gill. (Md.) 345.

The motions to dismiss the appeal, which were ordered submitted with the case, are overruled.

The judgment of the district court is—*Reversed.*

EVANS, C. J., and STEVENS and VERMILION, JJ., concur.