Robert Durwood THOMAS, Appellant,

v.

STATE of Iowa, BOARD OF PAROLE and Lou V. Brewer, Warden, Iowa State Penitentiary, Appellees.

No. 2–56914.

Supreme Court of Iowa.

July 31, 1974.

Frank M. Krohn, Newton, for appellant.

Richard C. Turner, Atty. Gen., Thomas D. McGrane, Asst. Atty. Gen., and Bruce Nuzum, Jasper County Atty., for appellees.

Heard before REYNOLDSON, Acting C. J., and MASON, RAWLINGS, REES and UHLENHOPP, JJ.

UHLENHOPP, Justice.

This appeal involves the validity of a parole revocation.

A court sentenced petitioner Robert Durwood Thomas to serve not exceeding seven years in the Iowa State Penitentiary. After Thomas served about a year, the Iowa Board of Parole paroled him on specified conditions. About four months later, on September 13, 1972, a parole officer arrested petitioner in Johnson County, Iowa, for violating the parole. The officer gave him written notice of a hearing to be held before a hearing officer on October 24, 1972. The notice set forth the alleged parole violations. The officer also furnished defendant a detailed written report of the claimed violations. Some of the violations listed were associating with a person having a criminal record (one Funeberg, also a parolee), not keeping reasonable hours,

visiting taverns and places of questionable reputation, participating in a scheme to defraud, attempting to take another person's Cadillac car from a garage in the middle of the night, and contributing to the delinquency of a minor (of which petitioner had been convicted after the charge was reduced from lascivious acts with a child).

A hearing officer held the hearing as scheduled. Two attorneys represented petitioner. Witnesses including petitioner testified. Petitioner told about his conduct which brought about his arrest. The written report furnished petitioner and presented to the hearing officer contained, statements by two women concerning the alleged scheme to defraud and attempted car theft. Petitioner did not request that these women be produced in person, and they were not produced. In making his order, the hearing officer considered the written statements of the two women.

Based upon petitioner's admissions, the other testimony, and the written statements of the two women, the hearing officer ordered petitioner held for a hearing before the board of parole on whether the parole should be revoked.

An officer gave petitioner written notice of a hearing to be held before the board on December 4, 1972. At that hearing, petitioner complained about the procedure at the previous hearing but offered no evidence on the merits as to whether his parole should be revoked. The record contains no indication he requested that any person be called or that he objected to the material considered by the board. From the original written report, petitioner knew who the witnesses would be and the substance of their testimony. The board considered the testimony and the written report containing the statements of the two women—who were not present in person. After the hearing, the board revoked the parole.

On December 6, 1972, under chapter 663A of the Code, petitioner filed in Jasper County the instant application for postcon-viction relief. The county attorney did not answer within 30 days, and on January 9, 1973, petitioner filed a motion asking the court to grant the relief prayed. On January 17, 1973, the Jasper County Attorney filed resistance to the motion and a request for extension of time to answer. He alleged in his request that the previous county attorney had just left office and the papers had become lost in the process. He further alleged that petitioner's arrest for parole violation occurred in Johnson County, so that extra time had been necessary to ascertain the facts. On the same day, January 17, the district court granted the extension by ex parte order. Also that day, the county attorney filed answer.

The parties filed various other documents, and on June 27, 1973, petitioner filed an amended and substituted application for postconviction relief. On August 30, 1973, after thoroughly reviewing the case in written findings, the district court entered an order of its intention to dismiss the application under § 663A.6 of the Code, and gave petitioner an opportunity to reply. Petitioner replied, alleging (a) the district court erroneously extended the time for the county attorney to answer petitioner's original application for postconviction relief, (b) the board of parole did not hold the revocation hearing within a reasonable time, and (c) the board deprived petitioner of his right to confrontation of witnesses. After considering the entire record and petitioner's reply, the trial court dismissed petitioner's application on September 28, 1973.

Petitioner appealed. In this court, petitioner presents the three questions he raised in his reply in district court.

I. *Extension of Time.* The first paragraph of § 663A.6 of the Code provides:

Within thirty days after the docketing of the application [for postconviction relief], *or within any further time the court may fix,* the state shall respond by answer or by. motion which may be supported by affidavits. At any time prior

to entry of judgment the court may grant leave to withdraw the application. The court may make appropriate orders for amendment of the application or any pleading or motion, for pleading over, for filing further pleadings or motions, *or for extending the time of the filing of any pleading.* In considering the application the court shall take account of substance regardless of defects of form. If the application is not accompanied by the record of the proceedings challenged therein, the respondent shall file with its answer the record or portions thereof that are material to the questions raised in the application. (Italics added.)

■ At the time the district court extended the time for the county attorney to file answer to petitioner's application for postconviction relief, more than 30 days had expired from the docketing of petitioner's application, but the proceeding had not yet gone to judgment. The intent of § 663A.6 appears to be to get at the merits of the controversy, and after the county attorney obtained the extension, he forthwith filed answer. In view of the portions of § 663A.6 which we have italicized, we think the court acted within its discretion in extending the time for filing the answer under the circumstances of this case. Furgison v. State, 217 N.W.2d 613 (Iowa). Moreover, even if the county attorney had never filed answer, the trial court would not necessarily have granted petitioner's application. The trial court would have disposed of the application on its merits. The situation is not akin to a private suit on a note in which the plaintiff is entitled to his judgment if the defendant defaults.

We do not indicate approbation of tardy responses to applications for postconviction relief. Since the statute specifies 30 days, respondents should ordinarily move or answer within that time. If they are unable to do so, they should, within that time, seek an extension on notice. But we find no abuse of discretion regarding this extension.

II. *Revocation Hearing In Reasonable Time.* The constitutional requirements for parole revocations were laid down in Morrissey v. Brewer, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484. The Court mandated a two-step procedure: an initial hearing, followed by the revocation hearing itself if the parolee desires one. If the initial hearing results in a finding that the parolee should be held, he will usually be kept in custody pending the revocation hearing. Hence a tender of a revocation hearing should not be unduly delayed.

In Morrissey, the Court spoke of this time element in two places:

> There is typically a substantial time lag between the arrest and the eventual determination by the parole board whether parole should be revoked. 408 U.S. at 485, 92 S.Ct. at 2602, 33 L.Ed.2d at 496;

and:

> The revocation hearing must be tendered within a reasonable time after the parolee is taken into custody. A lapse of two months, as the State suggests occurs in some cases, would not appear to be unreasonable. 408 U.S. at 488, 92 S.Ct. at 2603–2604, 33 L.Ed.2d at 498.

■ Depending upon the circumstances of the case and of the nature of the alleged parole violations, the time lapse from arrest to revocation hearing may in some cases be less than two months while in other cases it may not be reasonably practical to have the hearing precisely within two months. We cannot fix a specific number of days for all cases. The board should act with reasonable celerity. The time lapse must not be unreasonable. Each case depends upon its own facts. Under the facts of this case, we cannot say the time lapse was unreasonable.

■ III. *Confrontation and Cross-Examination.* When we speak of the right of confrontation we include the attendant opportunity to cross-examine. Petitioner contends that at the two hearings he was

deprived of the right to be confronted with the two women whose statements related to the alleged fraud scheme and attempted car theft. Both the hearing officer, initially, and the board, subsequently, did consider the written report containing the statements of the two women, and the State did not produce the women in person. The record does not show that petitioner asked prior to the hearings to have the women produced or that he objected at the hearings to the introduction of the report. From the written material furnished petitioner prior to the hearings, he knew that the authorities relied on information given by the women.

As to the initial hearings before hearing officers, the Court held in Morrissey that persons who have given information on which revocation is to be based must be made available for questioning in the parolee's presence at his request (unless the hearing officer determines that such persons would be subjected to risk of harm if their identity is disclosed). 408 U.S. at 487, 92 S.Ct at 2603, 33 L.Ed.2d at 497–498. With reference to the subsequent parole-board hearings, which result in actual revocation or continuation of parole, the Court addressed the confrontation question again. The Court endeavored to make such hearings both fair and practical, stating in 408 U.S. at 488–489, 92 S.Ct. at 2604, 33 L.Ed.2d at 498–499:

> We cannot write a code of procedure; that is the responsibility of each State. Most States have done so by legislation, others by judicial decision usually on due process grounds. Our task is limited to deciding the minimum requirements of due process. They include (a) written notice of the claimed violations of parole; (b) disclosure to the parolee of the evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) *the right to confront and cross-examine adverse witnesses* (unless the hearing of-

ficer specifically finds good cause for not allowing confrontation); (e) a "neutral and detached" hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking parole. *We emphasize there is no thought to equate this second stage of parole revocation to a criminal prosecution in any sense.* It is a narrow inquiry; *the process should be flexible enough to consider evidence including letters, affidavits, and other material that would not be admissible in an adversary criminal trial.* (Italics added.)

This quotation contains a seeming contradiction in the area in which we are now involved; it grants the right of confrontation, while it allows consideration of letters, affidavits, and other material which would not be admissible in a criminal trial. How can both be true?

The confrontation situation arises in hearings before parole hearing officers and the parole board when (1) the State offers in evidence material which is hearsay (that is, the State offers the material to prove the truth of statements in the material), (2) the material does not come within a recognized exception to the hearsay rule, (3) the parolee has not at some previous stage of the proceedings already been confronted with the declarant of the statements, (4) the State does not produce the declarant at the hearing, and (5) the parolee objects at the hearing to the offered material on the ground that he is deprived of confrontation as to named declarants. See In re Delaney, 185 N.W.2d 726 (Iowa). If one or more of these elements is not present, the hearing officer or board does not have a confrontation problem. But we must devise proper procedure for the hearing-officer or board hearing in which all of these elements are present— procedure which is both due process and expeditious.

■■ We believe we can obtain guidance for such procedure from our law on use of documentary material in juvenile proceedings. In re Delaney, 185 N.W.2d 726 (Iowa). While the juvenile proceeding is not perfectly analogous, it is similar. One of the due-process requirements under Morrissey is "disclosure to the parolee of the evidence against him". We think this requirement applies as to both the hearing-officer and the board stages. The parolee thus knows in advance the identity of the individuals whose statements or reports the authorities rely on for revocation. We hold that to exercise his right of confrontation, a parolee must, prior to the hearing-officer or board hearing, as the case may be, request production in person at the hearing of such of those individuals as he desires present for confrontation. If the parolee makes such a request, then the hearing officer or board cannot receive material in evidence as to statements or reports of those individuals if the five enumerated elements of a confrontation situation exist. If the parolee does not make such a request, then the material is not inadmissible for non-confrontation notwithstanding that the five elements exist.

■ In the present attack on the hearing-officer and board hearings, petitioner must fail for two reasons: he did not, prior to the respective hearings, request production of the two women, and he did not object, at the hearings, to reception of the material containing their statements.

This case does not involve the exception stated in Morrissey regarding good cause for nonproduction of a person. We give no consideration in this case to that exception.

We do not find merit in petitioner's three-pronged attack on the trial court's denial of the application for postconviction relief.

Affirmed.