Stephen F. AVERY, Conservator for George Munden, and Frances Munden, Appellants,

v.

HARMS IMPLEMENT COMPANY and International Harvester Company, Appellees.

No. 58087.

Supreme Court of Iowa.

Oct. 18, 1978.

Hawkins, Hedberg & Ward, Des Moines, for appellants.

Jones, Hoffmann & Davison, Des Moines, for International Harvester Co.

Gleysteen, Harper, Kunze, Eidsmoe & Heidman, Sioux City, for Harms Implement Co.

LeGRAND, Justice.

The accident giving rise to this litigation occurred when a tractor being driven by George Munden along a public highway was struck from the rear by an automobile owned and driven by Myrtle M. Roberts. George Munden sustained serious injuries, both physical and mental. He brought suit for his damages. His wife, Frances, joined as a plaintiff for loss of consortium. While the suit was pending, a conservator was appointed for George Munden and was substituted for him as plaintiff. For convenience we refer to both plaintiffs as Munden. Trial to a jury resulted in verdicts for the defendants and this appeal followed. We reverse and remand for a new trial.

Before discussing the issues, we first describe the involved procedural processes by which this appeal reaches us.

The petition as originally filed by Munden was against Myrtle M. Roberts, the owner and driver of the vehicle which struck the tractor. Later the petition was amended to include Russell Christiansen (George Munden's employer) and Harms Implement Company (seller of the tractor) as additional defendants. Another amendment sought unsuccessfully to bring in as a defendant International Harvester Company, the manufacturer of the tractor.

By a series of counterclaims and cross-petitions, General Electric Corp., Stewart-Warner Corp., and International Harvester Company were brought into the case on various claims for contribution and indemnity. Since Harms was successful in defending against Munden's claim, the contribution and indemnity questions never materialized. We therefore need not consider them further.

Immediately prior to trial, Munden settled with both Myrtle Roberts and Russell Christiansen, Mrs. Roberts, in turn, settled her counterclaim against Munden and her cross-petition against Christiansen. The case went to trial on the claims of Munden and Mrs. Roberts against Harms Implement Company. The jury rejected all claims. Mrs. Roberts has not appealed, and this case is here solely on Munden's appeal.

Although most of the issues involve Munden's claim against Harms Implement Co., there is one separate matter between Munden and International Harvester Company. Munden challenges the trial court's dismissal of his action against that party. The trial court ruled the amendment by which a claim was first asserted against International Harvester Company was not filed within the two-year statute of limitations. *See* § 614.1(2), The Code. This is discussed later.

We consider first Munden's appeal against Harms Implement Company, which raises these four issues:

1. Error in permitting third-party stipulations during trial over Munden's objections.

2. Jury misconduct in considering matters outside the record.

3. Refusal to permit cross-examination of one of defendant's principal witnesses.

4. Error in Instructions.

■ I. We take up first the issue we believe to be dispositive of the case—the assertion Munden was denied the right to full cross-examination of the witness Jack Harms, president of Harms Implement

Company. We agree with Munden, and we believe the trial court committed reversible error in restricting cross-examination of this witness.

It became increasingly apparent as this case developed, both before and during trial, that the outcome turned on the condition and operation of the rear lights on the tractor. There is no doubt all the parties realized this and tried the case accordingly.

One of the principal witnesses for Harms Implement Company was its president, Jack Harms. There was considerable evidence the tractor lights had been malfunctioning several weeks before the accident. Christiansen (the owner of the tractor) had purchased a new light switch from Harms Implement Company and had tried unsuccessfully to install it. At his request, Harms Implement Company sent an employee named Tom Hegel to the Christiansen farm to repair the lights. After the accident, the question of what repairs had been made and how the lighting system was operating became of paramount importance.

During cross-examination of Mr. Harms concerning these matters, a number of objections were sustained on the ground the questions went beyond the scope of direct examination. Some objections were also sustained on the grounds of relevancy and materiality. We believe these rulings constitute reversible error.

The question of repairs to the lighting system was vital to the case. On direct examination Mr. Harms referred to Hegel's trip to the farm to repair the lights two weeks before the accident. He stated, over objection, how Hegel had hooked up the lights on that occasion.

Much of Mr. Harms' direct testimony was devoted to establishing how the lighting system worked. This included graphic exhibits showing the wiring system and the different ways in which the lights could be displayed. It included also a mock-up and a demonstration by which the jury was shown the actual operation of the system at the time of the accident with testimony about heights, distances, and physical arrangement of the tractor.

The obvious purpose of all this was to show the lights were operating properly and that there was no malfunction attributable to Harms Implement Company. The reference to Tom Hegel's visit to the Christiansen farm two weeks before the accident was at least arguably intended to raise the inference that whatever was wrong with the lights had been fixed.

It was in this context that plaintiff undertook cross-examination of Mr. Harms. We set out some, but not all of the complaints by which he says he was not permitted to do so adequately.

Although much of Harms' testimony was directed toward an explanation of the lighting system as displayed in the mock-up, counsel was not permitted to show this did not truly represent how the tractor lights would actually appear on the highway to travelers approaching from the rear. We believe this was a proper line of inquiry.

Counsel wanted to show what Harms' employee (Hegel) should have done under the company's operating procedures when he went to Christiansen's farm to repair the lights. He was not permitted to do so although Harms had testified on direct examination over Munden's objections concerning what Hegel did.

During direct examination, Harms testified at length about the tractor's wiring system and the use of different switch settings. On cross-examination an attempt was made to show the possibility of other switch settings. We believe this, too, was proper.

■ Ordinarily the scope of cross-examination is within the trial court's discretion. We reverse only for an abuse of discretion, and then only if it appears that prejudice resulted. We therefore have two matters to determine. Was the error in restricting cross-examination such as to constitute an abuse of discretion and, secondly, if so, was it prejudicial? We think both questions must be answered in the affirmative and that such answers require a new trial.

While the scope of cross-examination is discretionary, the right to do so is absolute. It is a right essential to a fair trial. *Thomas v. State Board of Parole*, 220 N.W.2d 874, 877 (Iowa 1974); *Wheatley v. Heideman*, 251 Iowa 695, 710, 102 N.W.2d 343, 353 (1960); *Dioptron Co. v. Dimmitt*, 245 Iowa 450, 455, 62 N.W.2d 749, 751–52 (1954).

Only after a party has been afforded an opportunity for full and fair cross-examination may the trial court limit its scope. 98 C.J.S. *Witnesses*, § 368, p. 118 (1957); 81 Am.Jur.2d *Witnesses*, § 481, p. 488 (1976). *Pickerell v. Griffith*, 238 Iowa 1151, 1163–64, 29 N.W.2d 588, 595 (1947).

Under our rules, cross-examination is limited to matters testified to in chief. *Uhlenhopp v. Steege*, 233 Iowa 368, 372, 7 N.W.2d 195, 197 (1942). However, this does not mean counsel is restricted to a categorical review of those matters testified to on direct examination. It may extend to any subject within the fair purview of direct examination. *State v. Monroe*, 236 N.W.2d 24, 29 (Iowa 1975); *State v. Jensen*, 189 N.W.2d 919, 924 (Iowa 1971). We have said cross-examination may be used to rebut not only the direct testimony but the presumptions or inferences which such testimony reasonably raises *Dioptron Co. v. Dimmitt*, 245 Iowa at 456, 62 N.W.2d at 752; *Wheatley v. Heideman*, 251 Iowa at 710, 102 N.W.2d at 353.

We are convinced Munden had an absolute right to pursue with the witness Harms the lines of inquiry the trial court refused to allow. The denial of that right was an abuse of discretion. In view of the importance of the issue involved—the lighting system—we hold Munden was prejudiced by the trial court's rulings and is entitled to a new trial.

II. Our conclusion in Division I makes it unnecessary to consider the other issues argued by Munden concerning jury misconduct and third-party in-trial stipulations. The same is true of his complaint that the trial court refused his requested instruction on a matter not likely to arise on re-trial.

III. Munden also complains that Instruction 17 told the jury a failure to have the light switch in a certain position and in failing to use the amber warning light would be negligence per se.

We do not believe the Instruction is fairly open to this construction. The Instruction actually stated that Munden was "required to use reasonable and ordinary care" in the use of the lighting equipment and that a failure to do so would constitute negligence. We see nothing wrong with this instruction.

IV. We must still decide whether the trial court was right in granting summary judgment for International Harvester Company, a matter to which we referred briefly earlier.

Munden's cause of action was first asserted against International Harvester Company in a third amendment to his petition filed more than two-and-a-half years after the accident. On motion, the trial court entered summary judgment dismissing the action because it was barred by the statute of limitations under § 614.1(2), The Code. In granting summary judgment, the trial court rejected Munden's claim the statute of limitations was extended under § 614.8, The Code, because he was, and continued to be, mentally ill. We neither consider nor decide if summary judgment was properly granted because we hold this was a final judgment from which appeal was not timely taken.

Munden argues *Reuter v. City of Oskaloosa*, 253 Iowa 768, 113 N.W.2d 716 (1962), is an authority for his right to maintain this appeal. However, we limited *Reuter* in *McGuire v. City of Cedar Rapids*, 189 N.W.2d 592, 597–98 (Iowa 1971), and it does not apply under the facts of the present case.

The rule established in *McGuire* and reaffirmed in the later cases of *Rush v. Sioux City*, 240 N.W.2d 431, 436 (Iowa 1976) and *Swets Motor Sales, Inc. v. Pruisner*, 236 N.W.2d 299, 302–03 (Iowa 1975) controls. In those cases we held an order dismissing one of several defendants is a final determination if the claim against such defendant

is separable, is not dependent on the asserted liability of the remaining defendants, and the dismissal will not affect the issues between plaintiff and the remaining defendants. Munden's claim against International Harvester Company falls within this class. The fact that in several divisions of his pleading Munden asked judgment "jointly and severally" against International Harvester Company and Harms Implement Company in no way changes this. The claim against one was not related to nor dependent on, the claim against the other.

We hold Munden's right to challenge the summary judgment in favor of International Harvester Company has been lost by failure to appeal within 30 days as directed by rule 335, R.C.P., (now rule 5, Rules of Appellate Procedure). Although this issue is not raised, the matter is jurisdictional and may be considered on our own motion. *Qualley v. Chrysler Credit Corp.*, 261 N.W.2d 466, 468 (Iowa 1978).

■ Perhaps anticipating this result, Munden sought to save the action against International Harvester Company by filing a motion to vacate the judgment under rule 252, R.C.P. The motion was denied, and this is now assigned as error.

The ground relied on is that George Munden was of unsound mind. It is asserted the summary judgment should be vacated under rule 252(c) which provides a judgment may be vacated for "erroneous proceedings against a * * * person of unsound mind."

We hold Munden cannot prevail on this argument. Munden was represented by counsel at all stages. In addition his wife was co-plaintiff, asserting claims arising out of the same accident. He participated in numerous court proceedings over a two-year period. At no time was any defense of mental disability asserted either by Munden's original counsel (who later became his conservator) or by his new counsel, who now represents him.

Interestingly enough, although the matter of mental illness was raised in Munden's resistance to motion for summary judgment, no supporting evidence was produced at the hearing on the motion. Only in asking that the summary judgment be vacated was any "proof" of Munden's mental illness presented. It consisted of an affidavit from a doctor who did not attend or examine Munden until after the statute had run.

Usually rule 252(c) is invoked by defendants who seek to excuse their failure to appear and defend against a claim after being served with original notice. Here it is relied on by a plaintiff already in court, already vigorously pursuing his rights against a number of parties, already actively participating in a seemingly endless—judging by the voluminous file—stream of court proceedings. During all this time he was represented by counsel, who at no time found it necessary to claim he was of unsound mind.

It is true Munden is now the subject of a conservatorship, but a conservator was not appointed until January 8, 1975, more than four years after the accident. As already noted, his conservator is the lawyer who originally represented him and who apparently thought him mentally competent at that time.

The cases cited by Munden do not support his position. In *Watson v. Horner*, 178 Iowa 499, 501–02, 159 N.W. 1032, 1033 (1916), a judgment was set aside because the defendant alleged to be of unsound mind did not appear, made no defense, and took no steps to protect himself. Similar circumstances appear in *Hawley v. Griffin*, 121 Iowa 667, 678, 92 N.W. 113, 116–17 (1902).

On the other hand, we refused to set aside judgments in several cases when it appeared the party was represented by counsel, had presented a defense, and there was no showing the party was of unsound mind when judgment was entered. *See Ware v. Eckman*, 224 Iowa 783, 786, 277 N.W. 725, 726–27 (1937) and *Engelbercht v. Davison*, 204 Iowa 1394, 1401–02, 213 N.W. 225, 227–28 (1927).

We hold Munden was not entitled to have the summary judgment in favor of International Harvester Company vacated and affirm the trial court on this issue.

V. We affirm the judgment for International Harvester Company dismissing Munden's claim. We reverse the judgment for defendant Harms Implement Company and remand for a new trial.

AFFIRMED IN PART. REVERSED IN PART AND REMANDED FOR NEW TRIAL.

REYNOLDSON, C. J., and REES and UHLENHOPP, JJ., concur.

McCORMICK, J., dissents with opinion, in which HARRIS, J., joins.

ALLBEE, McGIVERIN and LARSON, JJ., take no part.

McCORMICK, Justice (dissenting).

Although I believe the trial court would have acted within its discretion in allowing fuller cross-examination of Harms, I would not hold the court's rulings are reversible error.

The action is based on injuries suffered by George Munden when the tractor he was driving was struck from the rear at night on a country road by an automobile. The driver of the automobile testified she saw only a single white light on the rear of the tractor and thought it was the headlight of an oncoming car. Defendant Harms Implement Company had sold the tractor to Munden's employer with that taillight on it and had repaired the wiring on the lighting system shortly before the accident.

The tractor was equipped with two white front lights mounted on the fenders, two white front floodlamps mounted to the inside of the front lights, an amber light located on the left fender which flashed to the front and rear, and a rear combination taillight which could be used as either a white floodlight or a red taillight. When the lighting system was working properly it had four switch settings, "off", "D", "B", and "R". The "R" position was used for fieldwork. It was the only position in which all four front lights would be on and the only position in which the rear light would be on as a white floodlight. It was the only setting other than "off" in which the red taillight and amber flashing light were not activated.

Plaintiffs' theory was that at the time of the accident Munden properly had the light switch on a setting in which the taillight was supposed to show red but that because of paint flaking it appeared to be white. They were confronted with evidence that all four front lights were on at the time of the accident and that the amber light was not activated. They sought to explain this and other evidence tending to show that the light switch was in the "R" position by suggesting that the system was improperly wired and not functioning as it should have been at the time of the accident.

Harms Implement Company employee Tom Hegel, who purportedly repaired the tractor lights before the accident, was called as an adverse witness by plaintiffs and was fully examined concerning that event as well as the effects of proper and improper wiring of the lighting system. Harms' later testimony depended on the assumption Hegel had repaired the wiring in the manner he claimed. His opinion that the mock-up was wired in the same way was admittedly based in part on "information . . . gained from the testimony in this lawsuit . . ." Whether Hegel had in fact correctly performed the repair depended on his credibility rather than that of Harms.

The subsequent demonstration was thus predicated on Hegel's testimony that the repair was properly done. Its purpose was to show the various lighting combinations which would result when the light switch was placed in available settings. The demonstration was indisputably accurate for that purpose.

Harms did not testify that the same conditions of visibility would exist on the highway as in the courtroom. Nor do I find an inference to that effect in his testimony. Plaintiffs sought unsuccessfully to cross-examine him about how certain lighting com-

binations might appear to a person approaching the tractor on the highway at night from the rear. The trial court may well have believed Harms' opinion on that subject would be superfluous. The jury had the full picture regarding conditions at the time of the accident and was fully capable of drawing its own conclusions. See *Hegtvedt v. Prybil*, 223 N.W.2d 186, 189–190 (Iowa 1974).

If plaintiffs were seeking to impeach Harms through this inquiry they did not alert the trial court to that fact. Moreover, assuming that was their purpose, the cross-examination was hardly necessary to persuade an Iowa jury that conditions in the courtroom were different than they were on the highway.

Plaintiffs also complain of limitations placed on their cross-examination of Harms about operating procedures in repairing tractor lights. Harms did not testify on direct examination about repair procedures. He only said that the repair here was made by Hegel, who was a trained repairman. In fact plaintiffs' were attempting to cross-examine Harms about the deposition testimony of his service manager Bill Zesiger, not about his own testimony. The trial court allowed some of this cross-examination and rejected some of it. I do not find any basis for holding the trial court abused its discretion in limiting this cross-examination.

Another major complaint of plaintiffs is a ruling of the trial court denying them the right to conduct a demonstration during cross-examination with the amber light disconnected. Under plaintiffs' theory of the case the amber light may not have been working at the time of the accident. It would have been appropriate for the court to allow this demonstration during cross-examination. Nevertheless Harms offered to let plaintiffs use the mock-up later to conduct any demonstration they desired as part of their own case, and plaintiffs rejected this opportunity. They did show the jury the lighted taillight without the amber light. No basis exists for finding prejudice from the trial court's ruling on this subject.

In light of the trial court's range of discretion in controlling cross-examination and the absence of prejudice from the rulings, I do not believe reversible error has been shown. Because I would also find the other assignments of error to be without merit, I would affirm the trial court.

HARRIS, J., joins in this dissent.