STATE of Iowa, Appellee,

v.

Dennis PINCKNEY, Appellant.

No. 63301.

Supreme Court of Iowa.

June 17, 1981.

Rehearing Denied Aug. 21, 1981.

Garry D. Woodward, Des Moines, for appellant.

Thomas J. Miller, Atty. Gen., Roxann M. Ryan, Asst. Atty. Gen., and Dawn DiBenedetto, Asst. Polk County Atty., for appellee.

Considered by REYNOLDSON, C. J., and UHLENHOPP, HARRIS, McGIVERIN, and LARSON, JJ.

REYNOLDSON, Chief Justice.

November 8, 1978, defendant was charged by trial information with three counts of terrorism, a violation of section 708.6, Code Supp. 1977, and one count of possessing, receiving, transporting or causing to be transported a firearm or offensive weapon, a violation of section 724.-26, Code Supp. 1977. Upon trial the jury rendered verdicts of not guilty on the terrorism counts, but convicted defendant on the firearms count. He appeals and we affirm in part, vacate the judgment and remand for resentencing.

There was abundant evidence from which the jury could have found that on September 22, 1978, defendant's estranged wife, Julie, was a passenger in a car driven by her sister, Lori. Defendant followed them to a Des Moines service station. A confrontation ensued in which defendant obtained a shotgun from the car he was driving. While making various threats of violence,

defendant pointed it at Julie, Lori, and the service station attendant. He left when the station attendant told him the police were on their way. Later in the day defendant went to the police station where he was arrested and charged.

Defendant admitted he had the shotgun and was pointing it at the station attendant and waving it around. He testified the gun had no firing pin when the incident occurred and that the ammunition he put in the gun "wasn't the right gauge for that shotgun." An inoperable shotgun without a firing pin was admitted into evidence. This weapon had been produced by defendant's brother, who gave it to an investigator in the offender advocate's office on January 5, 1979. There was conflicting evidence as to whether it was the same gun defendant used on September 22, 1978.

In 1973 defendant had been convicted on a charge of larceny of a motor vehicle, a felony. In 1976 he received a restoration to rights of citizenship.

In this appeal defendant raises five issues. We treat these in the divisions that follow.

### I. *Does section 724.26, Code Supp. 1977, apply to this defendant?*

█ Defendant's civil rights were restored by the governor of Iowa on May 5, 1976, prior to the effective date of section 724.26. That section provides:

> Any person who is convicted of a felony in any state or federal court and who subsequently possesses, receives, or transports or causes to be transported a firearm or offensive weapon is guilty of an aggravated misdemeanor.

Defendant does not claim to have been "expressly authorized . . . to receive, transport, or possess firearms or destructive devices" under the section 724.27 exception.

After the briefs were submitted in this appeal we filed *State v. Hall*, 301 N.W.2d 729 (Iowa 1981). Our decision there dictates our rejection of defendant's contentions that section 724.26 as applied to him operates in an impermissibly retroactive fashion.

### II. *Does use of the term "firearm" in section 724.26 require a showing of operability?*

Defendant contends trial court should have sustained his directed verdict motion, grounded on the State's failure to prove his shotgun was operable when the alleged section 724.26 violation occurred. Defendant relies on our opinion in *State v. Lawr*, 263 N.W.2d 747 (Iowa 1978), and a recent amendment to section 724.1(6)(c), which he asserts makes clear the legislature's intent that an unserviceable gun is not a section 724.26 prohibited firearm. This amendment, effective January 1, 1979, provided that an "offensive weapon" shall not include "any firearm which is unserviceable by reason of being unable to discharge a shot by means of an explosive and is incapable of being readily restored to a firing condition." 1978 Session, 67th G.A., ch. 1174, § 2(c) (codified in § 724.1(6)(c), The Code 1981).

█ It is plain the above amendment merely removed unserviceable firearms from the definition of "offensive weapons." Firearms and offensive weapons are not synonymous, a distinction made obvious by the alternate reference in section 724.26 to "a firearm *or* offensive weapon" (emphasis supplied). If there were no difference, use of the two words would be redundant. It is not presumed the legislature intended words in a statute to be given a redundant or useless meaning. *Hanover Insurance Co. v. Alamo Motel*, 264 N.W.2d 774, 778 (Iowa 1978).

█ From its decision specifically to exempt unserviceable firearms from section 724.1, as well as from section 724.15 (annual permit, *see* § 724.15(2)(b), The Code), and its failure to apply the exemption to section 724.26, we discern a legislative intent that convicted felons are not to possess, receive or transport firearms, whether serviceable or unserviceable.

█ Nor do we find our *Lawr* opinion controlling. There we were concerned with

section 695.1, The Code 1977, which made it a felony for a person "with intent to use the same unlawfully against the person of another" to go armed "with a pistol, revolver, or other firearm." *See* § 708.8, The Code 1981. An operable firearm, necessary to carry out an intent to harm, should not be a requirement of section 724.26 where intent is not an element of the crime and different conduct is sought to be proscribed.

In *Lawr* we simply held that for the purposes of section 695.1, The Code 1977, a starter's pistol was not a "firearm." 263 N.W.2d at 751. The device in question was designed so that it could not be adapted or modified to fire a projectile or bullet. Its construction would not permit a cartridge to move into the firing position. *Id.* at 749. The gun in the case before us was designed to fire a projectile.

We hold that under section 724.26 there is no requirement that the firearm be serviceable, and find this issue raised by defendant to be without merit.

III. *Did trial court properly instruct the jury on the elements of the crime?*

Appeal counsel, who was not trial counsel, raises issues relating to jury instructions to which no exceptions were taken at trial. Defendant attempts to overcome this failure to preserve error by asserting the jury was allowed to convict "without reference to the statutory offense ... on elements of an offense newly created by the jury instructions." This, he argues, resulted in a lack of jurisdiction. However, only matters of *subject matter* jurisdiction may be raised for the first time on appeal. *See State v. Wiese*, 201 N.W.2d 734, 736 (Iowa 1972). Trial court clearly had subject matter jurisdiction, that is, the power to hear the general class of cases to which these proceedings belong. Thus defendant's failure to raise a jurisdictional challenge in trial court waives his right to raise this issue on appeal.

Defendant unsuccessfully challenged instruction 18 at trial and this is raised as error on appeal. Instruction 18 defined a firearm as "an instrument used in propulsion of shot, shell or bullets by the action of gunpowder or some other explosive within it." It defined "dangerous weapon" in a manner irrelevant here, and concluded:

It is for you to determine, from a consideration of all the facts and circumstances, whether the instrument or device used was a dangerous weapon or a firearm.

It is apparent the trial judge was attempting to relate the instruction both to the "dangerous weapon" in the terrorism counts and the "firearm" in the section 724.26 count. Of course, a firearm is a dangerous weapon by definition. *See* § 702.7 ("Dangerous weapons include ... pistol, revolver, or other firearm ...."). Defendant's trial objection was to the addition of the language "or other firearm" and grounded on the State's failure to show the gun was capable of inflicting death or serious injury.

On appeal defendant complains instruction 18 gave the jury a choice of determining whether the device was a dangerous weapon or a firearm. Because this objection was not raised in trial court we do not consider it here. In any event, as there is no dispute that the device was a shotgun, which is both a dangerous weapon and a firearm, defendant has demonstrated no prejudice. *See State v. Gibb*, 303 N.W.2d 673, 686 (Iowa 1981). Our holding does not indicate we approve the instruction as given.

IV. *Was defendant denied a fair trial by reason of judicial and attorney misconduct?*

Defendant's appeal counsel asserts there was misconduct on the part of the prosecutor, the defense attorney, and the trial judge. We are urged to review the actions of the trial attorneys and the trial judge, under the totality of the circumstances, to determine whether defendant received a fair trial. *See Kellogg v. State*, 288 N.W.2d 561, 563 (Iowa 1980); *State v. Larmond*, 244 N.W.2d 233, 235–37 (Iowa 1976).

Defendant concedes "neither attorney established a respectable objection record against the other." It is apparent from the in-chambers record there was a personality clash between the trial judge and defendant's trial counsel. It may have been launched during jury voir dire when the court inquired of two bearded jurors if they were related to Fidel Castro and defense counsel responded with a reference to the court as Idi Amin. A juror, evidently influenced by the banter during the jury examination, was moved to write a poem and give it to the court. Although it was not reported, the record otherwise makes apparent when defense counsel started to examine the defendant the court stopped the proceedings and read the humorous poem to the jury. In chambers, defense counsel asked the court "to consider the possibility that it may disqualify itself" because of the timing of the incident. After both parties had rested their cases, this episode became a ground for defendant's motion for mistrial. In the process of making a record in chambers with reference to this motion, trial court expressed its policy of "chiding jurors" to make them feel more at ease.

The in-chambers disagreements between defense counsel and the court became more numerous after counsel apparently made disgusted facial expressions when the court asked the bailiff to make certain the shotgun brought to the courtroom was not loaded. Counsel apologized for this conduct when trial court made reference to it in chambers.

These incidents have caused us grave concern, but after carefully examining the transcript we conclude no reversible error occurred. Trial court's expressed skepticism, regarding several of defendant's contentions and the authenticity of the shotgun produced, occurred in chambers, not before the jury. While we believe humorous exchanges between trial court and jurors have no place in a criminal trial, we hold the record in this case does not indicate defendant was prejudiced.

Nonetheless, we repeat what we wrote in *Larmond*, 244 N.W.2d at 235–36:

A trial judge should project "that atmosphere of austerity which should especially dominate a criminal trial and which is indispensable for an appropriate sense of responsibility on the part of court, counsel and jury." *Offutt v. United States*, 348 U.S. 11, 17, 75 S.Ct. 11, 15, 99 L.Ed. 11, 18 (1954); see *United States v. Dellinger*, 472 F.2d 340, 385–391 (7 Cir. 1972), cert. denied, 410 U.S. 970, 93 S.Ct. 1443, 35 L.Ed.2d 706 (1973).

We have frequently said a presiding judge must avoid any conduct by which the jury could infer bias against either party, *State v. Thornburgh*, 220 N.W.2d 579, 585 (Iowa 1974); *State v. O'Kelly*, 211 N.W.2d 589, 596 (Iowa 1973), cert. denied, 417 U.S. 936, 94 S.Ct. 2652, 41 L.Ed.2d 240 (1974); *State v. Kimball*, 176 N.W.2d 864, 867 (Iowa 1970), noting jurors are particularly sensitive to a judge's views, and the revelation of his feelings toward the parties, counsel and witnesses might influence the jury more than the evidence. *State v. Johnson*, 243 N.W.2d 598 (Iowa 1976); *State v. Grady*, 183 N.W.2d 707, 711 (Iowa 1971); *State v. Kimball*, supra.

In this jurisdiction a court presiding in a jury trial cannot comment on the facts. *State v. Robinson*, 165 N.W.2d 802, 806 (Iowa 1969); *State v. Philpot*, 97 Iowa 365, 370, 66 N.W. 730, 732 (1896). A defendant has a right to a jury verdict on the issue of his guilt, uninfluenced by any intimation, direct or indirect, of the presiding judge's views. See *Bierkamp v. Beuthien*, 173 Iowa 436, 440, 155 N.W. 819, 820 (1916).

It follows a trial court may not telegraph to a jury, by purposeful exclamations, gestures or facial expressions, his approval or disapproval, belief or disbelief, in the testimony of witnesses or arguments of counsel. See *Veal v. State*, 196 Tenn. 443, 446, 268 S.W.2d 345, 346 (1954); Annot., 49 A.L.R.3d 1186, 1187 (1973); 75 Am.Jur.2d, Trial § 104, pp. 202–203.

We likewise have examined the performance of defendant's trial counsel, and while

we do not condone all of his conduct at trial, we hold defendant was not deprived of his constitutional right to effective counsel. We note defendant was acquitted on three out of four counts, despite substantial adverse evidence.

Defendant further asserts he was prejudiced by the combined effect of a ruling on a motion in limine and a ruling sustaining a prosecution objection to testimony that would have disclosed he possessed the shotgun for protection from his wife's alleged boyfriend, not to threaten her. His motive may have been relevant to the terrorism counts, on which he was acquitted, but would have no bearing on the section 724.26 violation. We find no error requiring a reversal of defendant's conviction.

V. *Were the sentencing procedure and the sentence lawful?*

The State concedes this case must be remanded for resentencing because trial court failed to state its reasons for the sentence on the record as required by Iowa R.Crim.P. 22(3)(d). *See State v. Luedtke,* 279 N.W.2d 7, 8 (Iowa 1979).

The judgment entered in this case sentenced defendant to pay a fine of $5,000, "failing payment of which the Defendant shall serve one (1) day in the Polk County Jail for each $10 of fine unpaid."

Defendant had been represented throughout the trial by the public offender advocate. During sentencing the offender advocate was appointed to represent defendant on appeal. There is no dispute about his indigency.

Consequently, the sentence imposed was unconstitutional. The result is "to create two classes of convicted defendants indistinguishable from each other except that one is able to pay the fine and can avoid imprisonment, and the second cannot satisfy the fine and therefore cannot escape imprisonment." *State v. Snyder,* 203 N.W.2d 280, 287 (Iowa 1972).

We affirm in part, vacate the judgment, and remand for resentencing.

AFFIRMED IN PART; JUDGMENT VACATED AND REMANDED FOR RESENTENCING.