# IN THE SUPREME COURT OF IOWA

No. 23–0338

Submitted April 2, 2024—Filed May 10, 2024

**STATE OF IOWA,**

Appellee,

vs.

**ADAM AARON RHODES,**

Appellant.

Appeal from the Iowa District Court for Des Moines County, John M. Wright (motion to dismiss) and Michael J. Schilling (trial), Judges.

The defendant appeals a conviction for possession of a firearm as a convicted felon, arguing that his muzzleloader replica of an antique firearm is not a firearm within the meaning of Iowa Code section 724.26(1). **AFFIRMED.**

Waterman, J., delivered the opinion of the court, in which all justices joined.

S.P. DeVolder (argued) of the DeVolder Law Firm, P.L.L.C., Norwalk, and William L. Kutmus and Trever T. Hook of Kutmus, Pennington & Hook, P.C., West Des Moines, for appellant.

Brenna Bird, Attorney General, and Timothy M. Hau (argued), Assistant Attorney General, for appellee.

**WATERMAN, Justice.**

In this appeal, we must determine whether a replica of an antique muzzleloader rifle qualifies as a "firearm" within the meaning of Iowa Code section 724.26(1) (2021), which prohibits felons from possessing a "firearm or offensive weapon." The defendant in this case is a convicted felon who used the muzzleloader rifle to kill a deer. He argues that because the Iowa Code does not define "firearm" and excludes such a muzzleloader from the statutory definition of "offensive weapon," and because federal law excludes such muzzleloaders from the federal definition of "firearm," he did not violate the Iowa statute. The State argues, and the district court agreed, that the defendant is guilty of possessing a "firearm" under the common meaning of that term and our precedent. We retained the defendant's appeal.

On our review, we agree with the district court and the State. The Iowa legislature declined to enact the federal definition of "firearm." Our precedents apply the common meaning of "firearm" that encompasses this muzzleloader rifle. The felon-in-possession law uses the disjunctive "or" to prohibit felons from possessing a "firearm *or* offensive weapon." *Id.* (emphasis added). The exemption for muzzleloaders from the statutory definition of "offensive weapons" permits law-abiding citizens to possess them but not other offensive weapons—such as machine guns or hand grenades. Felons, like this defendant, remain prohibited from possessing *any* firearm, including this one, even if it is not an offensive weapon. For the reasons further explained below, we affirm the district court's judgment.

### I. Background Facts and Proceedings.

In 2004, Adam Rhodes was convicted of third-degree burglary under Iowa Code sections 713.1 and 713.6A(1) (2004), a class "D" felony. In December 2020, Rhodes purchased a Thompson/Center Impact .50 caliber in-line muzzleloader

rifle from Dick's Sporting Goods in Des Moines County. Hunters using muzzleloaders enjoy longer deer hunting seasons in Iowa,[1] and the purchase of such a muzzleloader does not require a federal background check. The record includes a photo of the muzzleloader Rhodes purchased:



On October 19, 2021, during the muzzleloader hunting season, the Iowa Department of Natural Resources law enforcement team received multiple complaints about Rhodes killing a "big deer" and that something was just "not right." The next day, officers met with Rhodes, who admitted to killing a deer from his tree stand. Rhodes initially told the officers that he used a bow. The officers located the deer carcass and found a gunshot wound with a copper bullet "in the hide of the deer." The officers sent that part of the hide to a veterinarian who determined that "there were definitely pieces of lead or 'shrapnel' in the hide."

The officers obtained a search warrant on October 21 to examine the contents of Rhodes's cell phone and confiscate his rifle. They found text messages Rhodes sent his wife, including a photo of Rhodes sitting in a deer

---

[1]Iowa has specific hunting seasons for muzzleloader firearms. *See Hunting Season Dates*, Iowa Dep't of Nat. Res., https://iowadnr.gov/hunting/hunting-season-dates [https://perma.cc/2K6F-S4YC] (outlining the dates for early muzzleloader hunting season as October 14 to October 22, 2023, and late muzzleloader season from December 18, 2023, to January 10, 2024). These seasons span more days than the shotgun seasons for hunting deer. *See id.*

blind with the muzzle-loading rifle and admitting that he shot the deer with his muzzleloader.

The State charged Rhodes with knowingly possessing a firearm as a convicted felon, in violation of Iowa Code section 724.26(1) (2021)—Iowa's felon-in-possession statute. Rhodes did not contest that he was a felon, nor did he argue that he was not in possession of the muzzleloader rifle. Instead, Rhodes moved to dismiss the charge, arguing that the weapon was a "replica" of an "antique firearm" and thus not a "firearm" under section 724.26(1).

The district court conducted an evidentiary hearing. Rhodes testified about his possession and ownership of the rifle. He also called an expert witness, Michael Anderson, who worked at an Iowa firearm dealership and served as a cavalry scout in the United States military for twenty years. Anderson is a certified National Rifle Association firearms instructor and teaches Iowa's permit-to-carry course. Anderson testified that Rhodes's rifle does not qualify as a firearm under federal or Iowa law and that the Federal Bureau of Alcohol, Tobacco, Firearms and Explosives does not consider muzzle-loading rifles as firearms. He opined that Rhodes's rifle is not considered a firearm because it cannot be converted into a rifle or shotgun, it cannot be converted to shoot rimfire or centerfire cartridges, it is a replica of an early 1800s muzzle-loading rifle with an antique firing mechanism, and it can only be safely fired using black powder or an approved black powder substitute.

The prosecutor only asked one question of Anderson: "Does the Thompson/Center Impact have the ability to propel a projectile by explosive force?" Anderson responded, "Well, yes. That's what a muzzleloader does, yes, ma'am."

Both parties presented arguments to the district court. Rhodes contended that a replica of an antique firearm does not fall within the definition of a

"firearm" under Iowa Code section 724.1, which does not define "firearm," while a replica of an antique firearm is excluded from the statutory definition of "offensive weapon." Rhodes reasoned that because the muzzleloader is excluded from the definition of "offensive weapon," it should not be included in the definition of a "firearm." The State argued that Rhodes was not charged with possessing an "offensive weapon" but instead a "firearm." According to the State, the term "firearm" includes a replica of an antique firearm that can propel a projectile using gunpowder.

The district court agreed with the State. The court found that the replica of an antique firearm is an "instrument used in the propulsion of shot, shell, or bullets by the action of gunpowder exploded within it." (Quoting *Firearm*, *Black's Law Dictionary* 761 (4th rev. ed. 1968).) "The Defendant wants this court to conclude the Defendant could have had no idea he was purchasing a firearm from Dick's Sporting Goods. The court cannot go to that extent."

A trial on the minutes commenced on August 22, 2022. The district court again heard arguments from both parties. The fighting issue remained whether the antique firearm constitutes a "firearm" under Iowa Code section 724.26(1).

On September 1, the district court entered judgment against Rhodes, finding him guilty of being a felon in possession of a firearm in violation of Iowa Code section 724.26(1). The court determined that a "firearm" should be defined broadly to include "any instrument which will or is designed to discharge a projectile by the force of a chemical explosive such as gun powder." (Quoting Iowa State Bar Ass'n, Iowa Criminal Jury Instruction 2400.8 (2022).) The court relied, in part, on the purpose of section 724.26, which is "both to protect the public and to impose punishment." (Quoting *State v. Olsen*, 848 N.W.2d 363, 368 (Iowa 2014).) The district court reasoned, "To adopt the Defendant's position would contravene the express purpose of the statute because persons convicted

of a felony could lawfully possess an instrument which will or is designed to discharge a projectile by the force of a chemical explosive such as gun powder."

The district court also rejected several affirmative defenses raised by Rhodes, most notably a void for vagueness constitutional challenge. The court stated, "[W]hen Iowa Code Section 724.1 and Section 724.26 are read together, the sweep of the prohibition against firearm possession is clear. There is a difference between possession of a firearm and possession of an offensive weapon." The court determined that an individual of ordinary intelligence would understand that "firearm" encompasses an instrument that discharges a projectile that was used to kill a deer.

The district court imposed a suspended fine and sentence, placing Rhodes on probation for a period not to exceed five years. Rhodes appealed his conviction, and we retained the case.

## II. Standard of Review

We review statutory interpretation questions and rulings on motions to dismiss a charge in a trial information for correction of errors at law. *State v. Middlekauff*, 974 N.W.2d 781, 790 (Iowa 2022). We review constitutional rulings de novo. *Id.* at 791. We review rulings on the sufficiency of evidence for correction of errors at law. *State v. Ramirez*, 895 N.W.2d 884, 890 (Iowa 2017).

## III. Analysis.

The dispositive issue on appeal is whether the Thompson/Center Impact .50 caliber in-line muzzleloader rifle is a "firearm" within the meaning of Iowa Code section 724.26(1). Rhodes admits he is a convicted felon and he used the rifle to kill a deer. Rhodes argues that we should interpret Iowa Code chapter 724 consistent with its federal counterparts: 18 U.S.C. §§ 921, 922(g), allowing felons to possess antique firearms. He also argues that because chapter 724 exempts muzzle-loading rifles from the definition of an "offensive weapon," we should not

include muzzle-loading rifles within the undefined term "firearm." The State argues that "firearm" should be given its common meaning and this weapon is a firearm under our longstanding precedent. We agree with the State.

We begin our analysis with the operative statutory language. Iowa Code chapter 724 is entitled "Weapons." Iowa's felon-in-possession statute provides:

> A person who is convicted of a felony in a state or federal court, or who is adjudicated delinquent on the basis of conduct that would constitute a felony if committed by an adult, and who knowingly has under the person's dominion and control or possession, receives, or transports or causes to be transported *a firearm or offensive weapon* is guilty of a class "D" felony.

Iowa Code § 724.26(1) (emphasis added). Chapter 724 does not define "firearm" but defines "offensive weapon" as any of the following types of "device or instrumentality":

> *a.* A machine gun. A machine gun is a firearm which shoots or is designed to shoot more than one shot, without manual reloading, by a single function of the trigger.

> *b.* Any weapon *other than a shotgun or muzzle loading rifle*, cannon, pistol, revolver or musket, which fires or can be made to fire a projectile by the explosion of a propellant charge, which has a barrel or tube with the bore of more than six-tenths of an inch in diameter, or the ammunition or projectile therefor, but not including antique weapons kept for display or lawful shooting.

> *c.* A bomb, grenade, or mine, whether explosive, incendiary, or poison gas; any rocket having a propellant charge of more than four ounces; any missile having an explosive charge of more than one-quarter ounce; or any device similar to any of these.

> *d.* A ballistic knife. A ballistic knife is a knife with a detachable blade which is propelled by a spring-operated mechanism, elastic material, or compressed gas.

> *e.* Any part or combination of parts either designed or intended to be used to convert any device into an offensive weapon as described in paragraphs "a" through "d", or to assemble into such an offensive weapon, except magazines or other parts, ammunition, or ammunition components used in common with lawful sporting firearms or parts including but not limited to barrels suitable for refitting to sporting firearms.

     *f.* Any bullet or projectile containing any explosive mixture or chemical compound capable of exploding or detonating prior to or upon impact, or any shotshell or cartridge containing exothermic pyrophoric misch metal as a projectile which is designed to throw or project a flame or fireball to simulate a flamethrower.

*Id.* § 724.1(1) (emphasis added).

The statute next excludes certain devices from the definition of "offensive weapon" under chapter 724: an "antique firearm," a "collector's item," and "any device which is not designed or redesigned for use as a weapon." *Id.* § 724.1(2). An antique firearm is defined in section 724.1(2)(*a*) as follows:

> [A]ny firearm with a matchlock, flintlock, percussion cap, or similar type of ignition system, manufactured in or before 1898 or any firearm which is a replica of such a firearm if such replica is not designed or redesigned for using conventional rimfire or centerfire fixed ammunition or which uses only rimfire or centerfire fixed ammunition which is no longer manufactured in the United States and which is not readily available in the ordinary channels of commercial trade.

*Id.* § 724.1(2)(*a*).

In section 724.25(2), the legislature provided a nearly identical definition of "antique firearm":

> As used in this chapter, an "antique firearm" means any firearm, including any firearm with a matchlock, flintlock, percussion cap, or similar type of ignition system, manufactured in or before 1898. An antique firearm also means a replica of a firearm so described if the replica is not designed or redesigned for using rimfire or conventional centerfire fixed ammunition or if the replica uses rimfire or conventional centerfire fixed ammunition which is no longer manufactured in the United States and which is not readily available in the ordinary channels of commercial trade.

*Id.* § 724.25(2).

The controlling provision, section 724.26(1), bars felons from possessing "a firearm or offensive weapon." *Id.* § 724.26(1). Chapter 724, without providing a codified definition of "firearm," expressly exempts antique firearms from the definition of an offensive weapon, as well as muzzle-loading rifles, cannons,

pistols, revolvers, or muskets. *Id.* § 724.2(*a*). We must decide whether Rhodes's muzzle-loading rifle falls within the meaning of "firearm" under section 724.26.

When the legislature does not define a term in a statute, "we look to the context in which the term appears and give it its ordinary and common meaning." *State v. Shorter*, 945 N.W.2d 1, 7 (Iowa 2020) (quoting *State v. Mathias*, 936 N.W.2d 222, 227 (Iowa 2019)); *see also* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 70 (2012) [hereinafter Scalia & Garner, *Reading Law*] ("One should assume the contextually appropriate ordinary meaning unless there is reason to think otherwise."). We give "firearm" its common and ordinary meaning at the time the statute was enacted.

Iowa's felon-in-possession statute was enacted in 1976. 1976 Iowa Acts ch. 1245 (ch. 1), § 2426 (codified at Iowa Code § 724.26 (Supp. 1977)). Two years later, we decided *State v. Lawr*. 263 N.W.2d 747 (Iowa 1978). In *Lawr*, the defendant placed a starter pistol against the victim's side, pulled the trigger, and inflicted a bruise and burn on her body. *Id.* at 748. We consulted dictionaries defining "firearm" to determine whether the defendant violated Iowa Code section 695.1 when he went armed with a "pistol, revolver, or other firearm" with the intent to use it unlawfully against another person. *Id.* at 748–49 (quoting Iowa Code § 695.1 (1977)). The dictionaries defined "firearm" as "a small arms weapon from which a projectile is fired by gunpowder." *Id.* at 749 (first quoting *Firearm, The Random House Dictionary* 534 (1966); then quoting *Firearm, Webster's International Dictionary* 951 (2d ed. 1961)). Ultimately, we concluded the starter pistol was not a "firearm" under section 695.1 because it "could not fire a projectile or bullet" and "its design was such it could not be adapted or modified to do so." *Id.*

Other contemporaneous dictionary definitions are consistent. *Black's Law Dictionary,* in 1968, defined "firearm" as "[a]n instrument used in the propulsion of shot, shell, or bullets by the action of gunpowder exploded within it." *Firearm, Black's Law Dictionary* 761 (4th rev. ed. 1968). *Webster's New Collegiate Dictionary* defined "firearm" as "a weapon from which a shot is discharged by gunpowder—usu[ally] used only of small arms." *Firearm, Webster's New Collegiate Dictionary* 427 (1981). The common dictionary meaning of "firearm" is a weapon that can fire a projectile using a propellant such as gunpowder.

Our cases have consistently applied the common definition of "firearm." In *State v. Pinckney*, we confronted the same question presented here—does a specific weapon fall within the definition of a "firearm" under Iowa Code § 724.26 when the weapon is expressly excluded from the definition of "offensive weapon?" 306 N.W.2d 726, 728 (Iowa 1981). *Pinckney* is directly on point and answered that question affirmatively, squarely rejecting the argument Rhodes makes today. *See id.* at 728–29.

In *Pinckney*, the defendant was charged with possessing a firearm as a felon. *Id.* at 727. The defendant admitted that he possessed a shotgun, but noted that "the gun had no firing pin" and "the ammunition he put in the gun 'wasn't the right gauge for that shotgun.' " *Id.* at 728. He relied on an amendment to section 724.1(6)(*c*), exempting an unserviceable weapon from the definition of an "offensive weapon." *Id.* The defendant argued that the amendment should be applied to "firearm," allowing felons to possess unserviceable firearms. *Id.* We concluded that his argument lacked merit:

> It is plain the above amendment merely removed unserviceable firearms from the definition of "offensive weapons." Firearms and offensive weapons are not synonymous, a distinction made obvious by the alternate reference in section 724.26 to "a firearm *or* offensive weapon" (emphasis supplied). If there were no difference, use of the two words would be redundant. It is not

> presumed the legislature intended words in a statute to be given a redundant or useless meaning.
>
> From its decision specifically to exempt unserviceable firearms from section 724.1, as well as from section 724.15 (annual permit, *see* [Iowa Code section 724.15(2)(*b*)]), and its failure to apply the exemption to section 724.26, we discern a legislative intent that convicted felons are not to possess, receive or transport firearms, whether serviceable or unserviceable.

*Id.* at 728–29 (citation omitted). We determined that if a weapon is designed to fire a projectile, it falls within the definition of a "firearm." *Id.* at 729. We held "that under section 724.26[,] there is no requirement that the firearm be serviceable, and find this issue raised by defendant to be without merit." *Id.*

In *State v. Hemminger,* we applied the same definition—a weapon "designed to be capable of propelling a projectile by explosive force"—to "firearm" under Iowa Code section 902.7 (1979). 308 N.W.2d 17, 21 (Iowa 1981). Because the loaded revolver was designed to fire ammunition, we determined that the defendant displayed a firearm in a threatening manner when he brandished a loaded revolver while committing a robbery. *Id.* at 20–21.

In *State v. Kenney,* we again were confronted with a challenge to Iowa's felon-in-possession statute, specifically "whether a shotgun and a rifle are firearms under Iowa Code section 724.26 [(1981)]." 334 N.W.2d 733, 733 (Iowa 1983). We looked to cases, including *Lawr*, *Hemminger*, and *Pinckney*, to define "firearm." *Id.* at 733–34. We stated, "a firearm is 'a small arms weapon from which a projectile is fired by gunpowder,' " *id.* at 733 (quoting *Lawr*, 263 N.W.2d at 749), and "that the weapon has to be clearly designed to be capable of propelling a projectile by explosive force," *id.* at 733–34 (citing *Hemminger*, 308 N.W.2d at 21). We held that a shotgun and a rifle "certainly fit the definition of firearm." *Id.* at 734.

We see no reason to depart from our precedent consistently defining "firearm" under section 724.26 for the last forty years. *See Book v. Doublestar Dongfeng Tyre Co.*, 860 N.W.2d 576, 594 (Iowa 2015) ("Stare decisis alone dictates continued adherence to our precedent absent a compelling reason to change the law."). We reiterate that a firearm is any instrument which will or is designed to discharge a projectile by the force of a chemical explosive such as gun powder. *See* Iowa State Bar Ass'n, Iowa Criminal Jury Instruction 2400.8 (2020).

Rhodes's Thompson/Center Impact .50 caliber in-line muzzleloader rifle falls squarely within this common meaning. The weapon Rhodes possessed is designed to fire a 50-caliber projectile by an explosive force—black powder or black powder substitute. As Rhodes's expert testified, a muzzleloader can propel a projectile by explosive force. "That's what a muzzleloader does." We hold that Rhodes's muzzleloader falls within the meaning of "firearm" in section 724.26.

We acknowledge the overlap between the definitions of "offensive weapon" and "firearm." Some firearms are also offensive weapons—such as a "machine gun." Iowa Code § 724.1(*a*) (2021). But this overlap makes sense. Under Iowa Code section 724.3, it is a crime for *any* unauthorized person (not just felons) to knowingly possess an offensive weapon. Offensive weapons such as machine guns are especially dangerous. By contrast, muzzleloader rifles generally fire a single shot and take time to reload. Muzzleloader rifles and antique firearms are excluded from the definition of "offensive weapon." *See id.* § 724.1(1)(*b*), (2)(*a*). But in section 724.26(1), the legislature barred felons from possessing an offensive weapon *or* firearm. *See id.* § 724.26(1). As the State argued in its brief, "[w]hen these [statutes] are read together, someone in possession of an 'antique firearm' does not . . . possess an 'offensive weapon,' but they do still possess a 'firearm.' "

We addressed this overlap in *State v. Halliburton*, determining whether a defendant who violates section 724.3 and section 724.26 can be punished under both statutes. 539 N.W.2d 339, 345 (Iowa 1995). We rejected the defendant's double jeopardy and merger arguments by explaining that the statutes serve different purposes:

> Although section 724.3 applies to any unauthorized person, it only prohibits the possession of "offensive weapons." The term "offensive weapons" is defined to include particularly lethal weapons such as machine guns and hand grenades. Iowa Code § 724.1 (1993). In contrast, section 724.26 is directed toward potentially harmful persons—felons. They are prohibited from possessing not only offensive weapons, but also firearms. *Id.* § 724.26. Thus, these sections focus on different dangers; section 724.3 is aimed at a class of particularly harmful *weapons*, whereas section 724.26 is aimed at a group of potentially harmful *persons*.

*Id.* at 344–45.

Rhodes argues that we should follow the federal felon-in-possession statute, 18 U.S.C. § 922(g), when we interpret Iowa's felon-in-possession statute. The federal provision exempts an "antique firearm" from its definition of "firearm." *Id.* § 921(a)(3). Rhodes does not argue that the federal statute preempts Iowa's; he merely argues that we should use the federal law as an interpretive guide. We disagree based on the differing statutory language.

18 U.S.C. § 922(g) traces its lineage back to the Gun Control Act of 1968— enacted eight years before Iowa's felon-in-possession statute. *See* Gun Control Act of 1968, Pub. L. No. 90-618, 82 Stat. 1213. The federal statute provides:

> It shall be unlawful for any person . . . who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year . . . to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

18 U.S.C. § 922(g)(1). In 18 U.S.C. § 921(a)(3), Congress provides a definition of "firearm," listing "(A) any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by the action of an explosive; (B) the frame or receiver of any such weapon; (C) any firearm muffler or firearm silencer; or (D) any destructive device."

Congress specifically exempted antique firearms from the definition of "firearm," stating that "[s]uch term does not include an antique firearm." *Id.* This provision was included when the statute was enacted, eight years before Iowa Code chapter 724 was enacted. *See* Gun Control Act § 102. The Iowa legislature, by contrast, subsequently left the term "firearm" undefined and refrained from adopting the federal statutory definition of "firearm" or the federal exemption for antique firearms.

The Wyoming Supreme Court expressly declined to read the federal exemption for antique firearms into that state's felon-in-possession statute. *See Harris v. State*, 137 P.3d 124 (Wyo. 2006). The Wyoming statute, like Iowa's, lacks a definition of "firearm." *Id.* at 128. The *Harris v. State* court determined that "firearm" is unambiguous and should be given its common definition: "capable of firing a projectile by using an explosive as a propellant." *Id.* at 128–29. The defendant argued, like Rhodes, that the state's highest court should "adopt the definition of firearms" from the federal statute and exclude "[m]uzzle-loading black powder rifles." *Id.* at 129. The *Harris* court called the defendant's approach "misguided," stating:

> We must give effect to the Wyoming legislature's intent as expressed in the language of the statute. The Wyoming legislature chose to modify the term "firearm" with the word "any." The phrase "any firearm" signifies the legislature's intent to keep firearms away from felons who have demonstrated their propensity for violence. If the legislature intended to create an exception for a muzzle-loading black powder rifle, it could have done so. It did not. We are not free to legislate. We cannot read exceptions into a statute that were not

made by the legislature. The inescapable conclusion is that a muzzle-loading black powder rifle falls within the definition of "firearm" as contemplated by Wyo. Stat. Ann. § 6–8–102.

*Id.* (citations omitted). We reach the same conclusion under Iowa Code chapter 724. Rhodes cites no on point contrary authority.

The Supreme Court of Nevada, faced with the same question, cited *Harris*, and determined that "[w]hile federal law currently permits felons to possess black powder rifles, that does not mandate that Nevada follow suit." *Pohlabel v. State*, 268 P.3d 1264, 1268–69 (Nev. 2012) (en banc). "The choice as to whether to deny felons the right to possess any and all firearms, as Nevada has done, or to permit them to possess antique firearms and black powder rifles, as Congress has done, is legislative, not judicial." *Id.* at 1269. We agree and decline to adopt Rhodes's rewrite of section 724.26. The Iowa legislature is free to adopt the federal exception for antique firearms but has not done so.

The Iowa legislature presumably declined to exempt antique firearms from our state felon-in-possession law to further its goal of keeping firearms from the hands of convicted felons. "No one questions the legislature's purpose in prohibiting felons from possessing firearms. It is because the legislature considers them dangerous. This is a legitimate public purpose because such persons have an elevated tendency to commit crimes of violence." *State v. Buchanan*, 604 N.W.2d 667, 669 (Iowa 2000) (citation omitted); *see also Olsen*, 848 N.W.2d at 368 (noting that the purpose of section 724.26 is "both to protect the public and to impose punishment"). It is reasonable for the legislature to bar felons from possessing a weapon that propels a projectile by explosive force. Indeed, Rhodes used his muzzle-loading rifle to kill a large deer.

Rhodes also relies on the placement of Iowa Code section 724.25. Rhodes notes that the legislature defined "antique firearm" not only in section 724.1, but also in 724.25, which directly precedes the felon-in-possession statute, section

724.26. Because "antique firearm" is specifically defined in section 724.25, he contends that the legislature meant for antique firearms to fall outside the scope of the term "firearm" as used in section 724.26. Otherwise, he contends, the definition in section 724.25 would be rendered superfluous. We disagree.

Iowa Code section 724.25 provides in full:

> 1. As used in section 724.26, the word "felony" means any offense punishable in the jurisdiction where it occurred by imprisonment for a term exceeding one year, but does not include any offense, other than an offense involving a firearm or explosive, classified as a misdemeanor under the laws of the state and punishable by a term of imprisonment of two years or less.

> 2. As used in this chapter, an "antique firearm" means any firearm, including any firearm with a matchlock, flintlock, percussion cap, or similar type of ignition system, manufactured in or before 1898. An antique firearm also means a replica of a firearm so described if the replica is not designed or redesigned for using rimfire or conventional centerfire fixed ammunition or if the replica uses rimfire or conventional centerfire fixed ammunition which is no longer manufactured in the United States and which is not readily available in the ordinary channels of commercial trade.

Nothing in this section expressly exempts antique firearms from the firearms felons are prohibited from possessing in section 724.26.

The term "antique firearm" is now only used in one other section of chapter 724: section 724.1—defining "antique firearm" nearly identical to section 724.25(2). *See* Iowa Code § 724.1(2)(*a*). This redundancy appears to be a vestige after the 2021 amendment to section 724.15 governing permits for handguns. *See* 2021 Iowa Acts ch. 35, § 2 (codified at Iowa Code § 724.15 (2022)).

Chapter 724 was initially enacted in 1976 without a definition of "antique firearm." *See* 1976 Iowa Acts ch. 1245 (ch. 1), § 2426. Two years later, the legislature amended the statute to define "antique firearm" in sections 724.1(2)(*a*) and 724.25(2). *See* 1978 Iowa Acts ch. 1174, § 2, § 17

(originally codified at Iowa Code § 724.1(6)(*a*), .25(2) (1979), now codified at Iowa Code § 724.1(2)(*a*), .25(2) (2021)). The legislature also amended section 724.15, governing permits to acquire a pistol or revolver, by adding an exemption for "an antique firearm." *Id.* § 8 (codified at Iowa Code § 724.15(2)(*b*) (1979)). "Any person who acquire[d] ownership of a pistol or revolver [was] not . . . required to obtain an annual permit if . . . [t]he pistol or revolver . . . [was] an antique firearm . . . ." *Id.* Thus, section 724.25(2) had served a useful purpose: defining what pistol or revolver a person could acquire without a permit under section 724.15. Former section 724.15 demonstrates that the legislature knows how to exempt an "antique firearm" from statutory requirements when it chooses to do so. *See* Iowa Code § 724.15 (2020).

But in 2021, the legislature amended section 724.15 to remove the exception for an "antique firearm" when it conformed Iowa handgun permitting requirements to federal registration laws. *See* 2021 Iowa Acts ch. 35, § 2 (codified at Iowa Code § 724.15 (2022)). The amendment left untouched section 724.25(2) and section 724.26. *See id.* ch. 35. Rhodes argues that "antique firearms" are not "firearms" for purposes of section 724.26 and his interpretation avoids rendering section 724.25(2) surplusage. The surplusage canon does not save Rhodes.

We reiterate that the surplusage canon should not be applied rigidly, and it should not be used to trump the ordinary meaning. *See Marek v. Johnson*, 958 N.W.2d 172, 177 (Iowa 2021) ("[T]he rule against interpreting statutes so they have surplusage is not the be all and end all."); *see also* Scalia & Garner, *Reading Law* 176–77 ("Put to a choice, however, a court may well prefer ordinary meaning to an unusual meaning that will avoid surplusage. So like all other canons, this one must be applied with judgment and discretion, and with careful regard to context. It cannot always be dispositive because (as with most canons) the

underlying proposition is not *invariably* true."). The surplusage canon does not trump the legislature's language chosen in section 724.26. *See State v. Wilson*, 941 N.W.2d 579, 590 (Iowa 2020) (reasoning that "other interpretive tools," like the "legislative language," were "more compelling" than the surplusage canon); *see also Rimini St., Inc. v. Oracle USA, Inc.*, 139 S. Ct. 873, 881 (2019) ("Sometimes the better overall reading of the statute contains some redundancy.").

The plain meaning controls here. In our view, "antique firearms" are a subset of "firearms." A Venn diagram containing a larger circle for firearms would include within it a smaller circle for antique firearms. Indeed, section 724.25 itself defines an "antique firearm" as "any *firearm*, including any *firearm* with a matchlock, flintlock, percussion cap, or similar type of ignition system, manufactured in or before 1898." Iowa Code § 724.25(2)(*a*) (2021) (emphasis added). The legislature thereby defined an "antique firearm" as a class or type of "firearm." And it expressly chose to use the broad, general term "firearm" in section 724.26—without exception. *See id.* We define "firearm" in the common, ordinary sense of the term instead of an unusual interpretation to avoid surplusage. *See* Scalia & Garner, *Reading Law* 176.

Rhodes's reading of the statute would write in a new exception to section 724.26 that its language does not support. For section 724.25(2)'s definition to apply, "antique firearm" must be "used" in that section of chapter 724. Iowa Code § 724.25(2). But "antique firearm" is nowhere mentioned in section 724.26. *See id.* § 724.26. We cannot give effect to Iowa Code section 724.25(2) by reading out the language the legislature chose—"as used in this chapter"—while reading in language—"antique firearm"—that does not appear in section 724.26. *See State v. Wagner*, 596 N.W.2d 83, 87 (Iowa 1999) (en banc) ("[P]rinciples of

statutory construction prevent us from reading into the statute something the legislature has not included.").

"[T]he legislature knew how to make its wishes known" if it wanted to exempt antique firearms from section 724.26, as it had done previously in section 724.15. *Id.* at 87–88 (surmising that the legislature knew how to include a specific phrase because it had included that phrase in an earlier adoption of the Code); *see also Nelson v. Lindaman*, 867 N.W.2d 1, 9–10 (Iowa 2015) (concluding that "[i]f the legislature wanted to exclude" from a statute particular claims, "it would have said so, as it has in other statutes"). We will not add an exception to the felon-in-possession statute that the legislature chose to omit.

Finally, Rhodes argues that "when different terms contained within a criminal statute are ambiguous and the ambiguity cannot be resolved by application of the ordinary rules of interpretation and construction, then the statute must be interpreted with leniency—that is, narrowly—and in favor of the criminal defendant." The rule of lenity does not help Rhodes. "We apply the rule of lenity in criminal cases, but we only do so as a last resort." *State v. Zacarias*, 958 N.W.2d 573, 581 (Iowa 2021). "Firearm" is not ambiguous. *See Harris*, 137 P.3d at 128 ("[T]he term 'firearm' is not a word that requires us to supply a new or different definition because it is not ambiguous."). We have defined the term "firearm" consistently since the enactment of section 724.26. And the district court correctly rejected Rhodes's void for vagueness argument finding the statute unambiguous, as do we.

The district court correctly ruled that Rhodes violated section 724.26 by possessing this muzzleloader rifle.

**IV. Disposition.**

For those reasons, we affirm the district court's judgment of conviction.

**AFFIRMED.**